No. 72,476

STATE OF KANSAS, *Appellee*, v. MICHAEL PROSPER, *Appellant*.

(926 P.2d 231)

Opinion filed October 25, 1996.

*Jean K. Gilles Phillips*, special appellate defender. argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Joe E. Lee*, assistant county attorney, argued the cause, and *Rodney H. Symmonds*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Michael Prosper was convicted by a jury of one count of sale of cocaine within 1,000 feet of a school. He was sentenced to 73 months' imprisonment. The Court of Appeals affirmed Prosper's conviction. *State v. Prosper*, 21 Kan. App. 2d 956, 910 P.2d 859 (1996). This court granted Prosper's petition for review.

Gregory Senigaur entered into an agreement with the State to set up three prosecutable drug buys in exchange for his being charged with possession of marijuana and possession of cocaine rather than possession of controlled substances with intent to sell within 1,000 feet of a school. On January 11, 1994, a police officer gave Senigaur $20 for the purpose of buying cocaine from Michael Prosper. Without making any prior arrangements with Prosper, Senigaur went to the defendant's apartment. Senigaur told the person who let him in that he wanted "to buy a 20." In other words, he wanted to buy $20 worth of rock cocaine. Prosper came out of the bathroom; then he and Senigaur went back into the bathroom,

talked briefly, and exchanged the $20 for rock cocaine. After being in the apartment approximately 5 minutes, Senigaur left and met the police at a prearranged spot.

The proximity of Prosper's apartment to a school was the subject of the testimony of Pamela Dunham, a cartographer with the Lyon County Appraiser's office. Approximately 2 months before trial, she prepared a map, which was marked as an exhibit and admitted into evidence. It showed what properties were within a circle with a 1,000-foot radius centered on 1001 Commercial Street in Emporia. The Alternative School is located at 1001 Commercial. Prosper's apartment at 824 Mechanic Street was within the circle. A straight line from the southeast corner of the building at 1001 Commercial to the southeast corner of the building at 824 Mechanic measured 865 feet. Dunham testified that the measurement was accurate to within 50 feet. She also testified that pedestrian routes between the school and Prosper's apartment exceeded 1,000 feet.

Prosper appealed his conviction, contending that (1) the evidence of prior drug transactions between the witness and himself was inadmissible; (2) the jury should have been instructed on the lesser included offense of sale of cocaine; (3) the sale of cocaine within 1,000 feet of a school is a specific intent crime; (4) there was insufficient evidence that the transaction occurred within 1,000 feet of a school; and (5) K.S.A. 1993 Supp. 65-4127a(d) is unconstitutionally vague.

The Court of Appeals affirmed Prosper's conviction, rejecting all of his contentions. As to Prosper's contention that the sale of cocaine within 1,000 feet of a school is a specific intent crime, the court noted that it already had been considered and rejected in *State v. Swafford*, 20 Kan. App. 2d 563, 567, 890 P.2d 368, *rev. denied* 257 Kan. 1095 (1995). In *Swafford*, the Court of Appeals considered federal case law interpreting the federal "schoolyard statute." The Court of Appeals stated:

"In *United States v. Falu*, 776 F.2d 46 (2d Cir. 1985), the court held that the schoolyard statute did not require proof that a drug trafficker had knowledge of the proximity of a school and concluded that a knowledge requirement would be contrary to the purpose of the statute disclosed by the legislative history. The court held that 'a requirement that the dealer know that a sale is geographically

within the prohibited area would undercut this unambiguous legislative design.' The court concluded that although 'some schools are not clearly recognizable as such from all points within the 1,000-foot radius, Congress evidently intended that dealers . . . bear the burden of ascertaining where schools are located and removing their operations from those areas or else face enhanced penalties.' 776 F.2d at 50.

"The legislative history cited by Swafford reveals that, like the federal schoolyard statute on which it was modeled, 65-4127a(c) was intended to create drug-free school zones. It was designed to protect young people from drug use and the violence and other negative influences that accompany drug dealing. Children are exposed to these negative influences when drug deals are conducted near schools regardless of whether the dealers know they are within 1,000 feet of a school.

"Requiring proof that Swafford knew a school was within 1,000 feet could impose an onerous burden on police and prosecutors. which would be contrary to the clear purpose of the statute. Swafford's knowledge of the proximity of a school is not an essential element of the crime of selling cocaine within 1,000 feet of a school under 65-4127a(c)." 20 Kan. App. 2d at 566-67.

In his petition for review, Prosper argued that *Swafford* was wrongly decided. His position is that the *Swafford* interpretation of the statute makes the sale of drugs within 1,000 feet of a school a strict liability crime. As the Court of Appeals stated, however, the question is "whether the legislature intended to require proof of knowledge of the proximity of a school *in addition to proof of intent to sell cocaine* to establish a violation of 65-4127a(c)." (Emphasis added.) 20 Kan. App. 2d at 566.

Prosper also argues that the district court should have given his requested instruction on the lesser included offense of sale of cocaine because there was evidence that pedestrian routes between his apartment and the nearby school covered more than 1,000 feet. The Court of Appeals correctly treated this question as a matter of statutory interpretation. 21 Kan. App. 2d at 959-60. The question really is whether K.S.A. 1993 Supp. 65-4127a(d) prohibits drug sales within 1,000 feet of a school as the crow flies or by pedestrian route. The statute provided, in part:

"Notwithstanding any other provision of law, upon conviction of any person for a first offense pursuant to subsection (b), such person shall be guilty of a drug severity level 2 felony if such person is 18 or more years of age and the substances involved were possessed with intent to sell, deliver or distribute; sold or offered for sale in or on, or within 1,000 feet of any school property upon which is located a structure used by a unified school district or an accredited nonpublic school for

student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12." K.S.A. 1993 Supp. 65-4127a(d).

Noting that the statute was based on a federal model, 21 U.S.C. § 860 (1994), the Court of Appeals consulted case law from federal courts, which have faced this issue many times. 21 Kan. App. 2d at 960. According to the Court of Appeals, "federal courts have consistently held that the phrase 'within 1,000 feet' of a school requires measurement in a straight line from the school property and not according to some pedestrian route. [Citations omitted.]" 21 Kan. App. 2d at 960. The Court of Appeals concluded that the legislature's purpose in protecting children from drug use and drug dealing "are achieved by giving effect to the plain meaning of 'within 1,000 feet,' just as the federal courts have done." 21 Kan. App. 2d at 961. Prosper offers no authority to support his contention that the distance should be measured by pedestrian routes from the school.

The Court of Appeals introduced Prosper's claim of insufficient evidence as follows:

"Prosper argues there was insufficient evidence to support the verdict because (1) there was no testimony that any property was 'school property'; (2) there was no evidence that he sold cocaine within 1,000 feet of a school, as measured by pedestrian route; and (3) there was no evidence he knew he was selling cocaine within 1,000 feet of a school." 21 Kan. App. 2d at 961.

In light of conclusions it had reached in the previous issues, the Court of Appeals declined to "address Prosper's second and third claims of insufficiency of evidence." 21 Kan. App. 2d at 963.

The first claim of insufficiency of evidence is predicated on a statutory requirement that "school property" within the meaning of K.S.A. 1993 Supp. 65-4127a(d) is school-district owned. Here, "the school property in question was leased by Unified School District No. 253 for instruction of students primarily in the 9th through 12th grades." 21 Kan. App. 2d at 962. The Court of Appeals rejected Prosper's argument:

"K.S.A. 1993 Supp. 65-4127a(d) requires that the structure or property be *used* by a unified school district or accredited nonpublic school. The statute contains no ownership requirement. Had the legislature intended to adopt an ownership

requirement, it could easily have done so. It is not the function of the court to rewrite a statute under the guise of interpretation. *Pestock v. State Farm Auto. Ins. Co.,* 9 Kan. App. 2d 188, 189, 674 P.2d 1062 (1984).

"Moreover, the legislature intended for the statute to protect children from the negative effects of drug use and drug dealing. *Swafford,* 20 Kan. App. 2d 567. Children are exposed to those negative influences when drug deals are conducted near schools regardless of whether the school buildings are owned or leased by school districts." 21 Kan. App. 2d at 962-63.

The Court of Appeals also rejected Prosper's argument that K.S.A. 1993 Supp. 65-4127a(d) is unconstitutionally vague. It did so on the ground that persons of common intelligence would not need to guess at what act was forbidden by the statute. The Court of Appeals reasoned:

"The issue is whether the statute's language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. *Boatright v. Kansas Racing Comm'n,* 251 Kan. 240, 243, 834 P.2d 368 (1992) (citing *Hearn v. City of Overland Park,* 244 Kan. 638, 642, 772 P.2d 758, *cert. denied* 493 U.S. 976 [1989]).

"As discussed above, the statutory language indicates the distance is to be determined by straight-line measurement and the property need not be owned by the unified school district or private school. Prosper's vagueness argument is without merit." 21 Kan. App. 2d at 963.

We have carefully reviewed the briefs, arguments, record, and the well-reasoned opinion of the Court of Appeals, and we conclude the Court of Appeals reached the correct result. The Court of Appeals' opinion is adopted as the opinion of this court with the following modifications:

In the Court of Appeals, Prosper argued that the district court committed reversible error in admitting testimony of prior drug sales. Prosper argued that testimony was not relevant to prove any disputed facts specified in K.S.A. 60-455, since he stood silent and did not place identity or intent or any of the other specified facts in issue. The Court of Appeals reasoned that the State was required to prove intent and identity and that the witness' testimony about prior crimes "buttressed his identification of Prosper and was probative of Prosper's intent." 21 Kan. App. 2d at 957-58. The State witness' courtroom identification of Prosper was unhesitating, and Prosper never challenged that identification.

Prosper relies on *State v. Davis*, 213 Kan. 54, 515 P.2d 802 (1973). He contends that *Davis* made prejudice to the defendant the controlling factor over relevance in determining the admissibility of prior crimes evidence.

Davis was convicted of two counts of selling heroin to an informant named Phillips. Phillips testified that on both occasions he went to Davis' apartment, gave Davis $100, and waited while Davis went elsewhere to purchase heroin. Before the State closed its case in chief, Phillips was recalled to testify about making two purchases of heroin from Davis during the previous year. On appeal, the State argued that evidence of the two earlier heroin transactions was admissible as evidence relevant to the issue of defendant's identity. 213 Kan. at 55. In this regard, the court expressed its intention to narrow the very broad construction which had been given the statutory provision on evidence of other crimes:

"[K.S.A. 60-455] is not autonomous on the admissibility of evidence of past crimes since it is subject to the provisions of other rules relating to the admission of evidence.

"Kansas case law makes it clear the majority of prosecutors and trial courts have read K.S.A. 60-455 as though the exception in the last sentence were the rule, and when the proffered past crimes evidence bore some relevance to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, the gates of admissibility automatically swung open under the theory proper instruction would correct any error of judicial discretion and would limit the jury's consideration of the evidence to its proper role.

"Relevancy as the single test of admissibility is disapproved from the very beginning of the evidence code. K.S.A. 60-407(f) provides all relevant evidence is admissible *except* as otherwise provided by statute. K.S.A. 60-455 is such an exception generally prohibiting evidence of past crimes and takes precedence over 60-407(f): . . .

. . . .

"Although K.S.A. 60-445 refers to the exercise of discretion by the trial court when the evidence relates only to 'surprise,' it is a rule of necessity that the trial court may exclude any evidence which may unfairly prejudice a jury. Judge Gard, in his comments following this statute, states:

'Scattered among the Kansas decisions are cases which support the discretionary power to exclude. The rule is one of necessity. Trial judges and lawyers who have cases in court understand it and are used to it. There is no novelty about it, but it is so taken for granted that to state it in rule form looks unfamiliar. It is absolutely essential to the orderly and fair administration of justice in order that evidence of

a relatively trifling character, though relevant and not expressly excluded by any arbitrary exclusionary rule, may not dominate the case, unduly prolong it, mislead or unfairly prejudice the jury, or work an unfair advantage because of surprise on collateral matters.' (Gard, Kansas Code of Civil Procedure Annotated, § 60-445, p. 433.)

"In *State v. Whiters*, 206 Kan. 770, 481 P.2d 992, we stated:

'The admission of such evidence is always subject to the discretion of the court. . . .' (p. 772.)

"We think it is not amiss to continue the rule of necessity that the trial court has all the established powers inherent in its function to assure a fair trial. These powers include the duty to weigh the prejudicial value of evidence of past crimes against its probative value to prove some material fact.

"The delicate balancing which the courts must continually perform has been written about at length. One such treatise will suffice to illustrate the problem:

'A basic rule of evidence, universally recognized, and continually applied, is that evidence even though relevant, should be excluded if its probative value is substantially outweighed by the risk that its admission will cause undue or unfair prejudice, confusion of the issues, misleading of the jury, undue delay or waste of time, or needless presentation of cumulative evidence. . . .' (1 Jones on Evidence, 6th ed., Relevancy, § 4.6, p. 392.)

"The duty of the court to protect defendants from unduly prejudicial evidence is well stated in *State v. Goebel*, 36 Wash. 2d 367, 218 P.2d 300 (1950):

'We have intentionally used the phrase "may be admitted" because we are of the opinion that this class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to, where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion. We repeat again a particularly apropos statement from *Shepard v. United States*, [290 U.S. 96, 78 L. Ed. 196, 54 S. Ct. 22 (1933)], referring to the rules of evidence: "When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." (p.379.)

"In Vernon's Kansas Statutes Annotated, Rules of Evidence, § 60-455, p. 376, it is stated there are at least three types of prejudice which might result from the use of other crimes as evidence:

'. . . First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer

even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed. . . .' " 213 Kan. at 56-58.

Applying these principles, the court concluded as follows:

"Defendant's conviction was based on the testimony of Phillips. He testified he purchased heroin from defendant on the dates charged in the information. Over objection, he also testified to the purchase of heroin on two prior occasions. The reliability of Phillips' testimony cannot be predicated on how many purchases he made. The credibility given his testimony as to purchases charged in the information cannot be enhanced by his testimony as to prior purchases. The probative value of the prior purchases must be tested by the same factors that determine the reliability of his testimony on the crimes charged. What we are saying is that the probative value of the testimony of Phillips as to prior purchases is questionable. The prejudicial result of the testimony is not questionable. It could result in one or all of the possibilities of prejudice we have heretofore outlined. The probative value of testimony is substantially outweighed by the risk that its admission will cause undue and unfair prejudice. We conclude the admission of this evidence was reversible error and a new trial should be ordered." 213 Kan. at 59.

We agree that, based on *Davis*, the evidence of prior drug sales by Prosper was not admissible under K.S.A. 60-455. However, *Davis* and the present case were decided on different legal grounds. In *Davis*, the evidence was erroneously admitted under K.S.A. 60-455. Here, the Court of Appeals correctly concluded that the evidence of prior drug sales was admissible independent of 60-455. 21 Kan. App. 2d at 958.

The Court of Appeals quoted the following passage from *State v. Jones*, 247 Kan. 537, 547, 802 P.2d 533 (1990):

" 'We have recognized several instances where evidence of prior crimes or civil wrongs may be introduced into evidence independent of K.S.A. 60-455, including evidence to establish the relationship or continuing course of conduct between a defendant and the victim. Evidence of prior acts of a similar nature between a defendant and a victim is admissible independent of K.S.A. 60-455 if the evidence is not offered for the purpose of proving distinct offenses but, rather, to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged.' " 21 Kan. App. 2d at 958.

The Court of Appeals then reasoned:

"Although *Jones* is couched in terms of evidence to show connections between the defendant and a victim, the same rationale has been applied in cases involving a drug seller and his customer. See *State v. Glazer*, 223 Kan. 351, 360-61, 574 P.2d 942 (1978); *State v. Solem*, 220 Kan. 471, 476, 552 P.2d 951 (1976); *Maxwell*, 10 Kan. App. 2d at 67.

"The testimony elicited from Senigaur disclosed an ongoing series of contacts related to drugs between Prosper and Senigaur. These contacts eventually led to the transaction in question. Senigaur's testimony about prior drug transactions showed the relationship between Prosper and Senigaur and revealed how Senigaur was able to buy cocaine from Prosper on January 11, 1994. The evidence was thus admissible independent of 60-455, and the district court did not err in admitting the testimony." 21 Kan. App. 2d at 958.

In particular, Senigaur's testimony explained how Senigaur was able to show up at Prosper's apartment without making prior arrangements, gain entry, purchase cocaine, and be on his way within a few minutes. Senigaur testified that he typically bought drugs from Prosper either at the apartment or at 1025 Sylvan Street and that he typically "just dropped by unannounced."

Although Prosper's argument that the evidence of prior drug sales was inadmissible under K.S.A. 60-455 does not affect the result reached by the Court of Appeals, it has merit, and, in adopting the Court of Appeals' opinion, we delete the language indicating that the evidence would be admissible under K.S.A. 60-455.

The judgment of the Court of Appeals affirming the district court is affirmed as modified. The judgment of the district court is affirmed.