No. 84,248

STATE OF KANSAS, *Appellee*, v. KRISTEN D. WILT, *Appellant*.

(44 P.3d 300)

Opinion filed April 19, 2002.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Thomas V. Black*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, J.: Kristen Wilt petitions this court for review of the Court of Appeals' decision *State v. Wilt*, No. 84,248, an unpublished opinion filed July 20, 2001, which affirmed her conviction for aiding and abetting the sale of marijuana within 1,000 feet of school property.

The State charged Wilt with aiding and abetting the sale of marijuana within 1,000 feet of school property. The State's evidence showed that a confidential informant for the Pratt County Sheriff's Department bought drugs from Justin Roberts in a shelter house at a park in Pratt. According to Jeff Ward, a deputy with the sheriff's department, Wilt drove up to where the informant was standing. Roberts was a passenger in the car. Wilt parked in the parking lot by the shelter house and Roberts got out of the car and approached the informant. Wilt followed a short time later. Ward estimated Wilt, Roberts, and the informant stood in the shelter house for approximately 5 minutes and then Wilt and Roberts drove off. Later, the informant produced for Ward the marijuana sold to her by Roberts.

The informant testified that Roberts sold her the marijuana and that both Roberts and Wilt were present at the time the money was exchanged for drugs.

The State presented the testimony of Dennis Lewis, a surveyor who testified the shelter house was 449.78 feet from ball diamonds in the park. Bruce Penkall, the recreation director for the city, testified that the ball diamonds were used by the high school for softball games and practices. Penkall described the arrangement between the city and school:

"Q. And is there any kind of an arrangement between the City and U.S.D. #382, Pratt High School for use of those diamonds?"

"A. The arrangement is just verbal between both groups. I mean, we talk about they can use our facilities and we can use theirs."

Penkall confirmed the ball diamonds were well under 1,000 feet from the shelter house.

Wilt testified in her own defense. Wilt told the jury she did not believe Roberts was selling drugs that day and that she did not know about the sale of marijuana to the informant until a week after the sale.

A jury convicted Wilt of one count of aiding and abetting the sale of marijuana within 1,000 feet of school property. The sentencing court granted Wilt's motion for a downward durational and dispositional departure, and sentenced Wilt to 36 months of probation, with an underlying prison term of 15 months. Wilt appealed, and the Court of Appeals affirmed her conviction. This court granted Wilt's timely filed petition for review.

Wilt argues the State presented insufficient evidence to prove the sale of marijuana occurred within 1,000 feet of a school. Wilt argues the ball diamonds in the city park do not constitute school property. The standard of review is well known:

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Jamison,* 269 Kan. 564, 571, 7 P.3d 1204 (2000).

The issue in this case is whether the high school's use of the ball diamonds for softball games and practices fits the definition of "school property." See K.S.A. 2001 Supp. 65-4163(b). Wilt argues in her petition for review that there was no evidence the property was "school property." K.S.A. 2001 Supp. 65-4163 provides:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with the intent to sell, deliver or distribute; cultivate; prescribe; administer; deliver; distribute; dispense or compound:

. . . .

(3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105, and amendments thereto or designated in subsection (g) of K.S.A. 65-4107 and amendments thereto or designated in subsection (g) of K.S.A. 65-4109 and amendments thereto;

. . . .

"Except as provided in subsection (b), any person who violates this subsection shall be guilty of a drug severity level 3 felony.

"(b) Notwithstanding any other provision of law, upon conviction of any person pursuant to subsection (a) for an offense in which the substances involved were possessed with intent to sell, sold or offered for sale in or on, or within 1,000 feet of any *school property* upon which is located a structure *used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities* of pupils enrolled in kindergarten or any of the grades one through 12 and such person is 18 or more years of age, such person shall be guilty of a drug severity level 2 felony." (Emphasis added.)

There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *State v. Alford*, 257 Kan. 830, 837, 896 P.2d 1059 (1995). Further, criminal statutes must be strictly construed in favor of the accused. *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998).

The Court of Appeals in *State v. Prosper*, 21 Kan. App. 2d 956, 962, 910 P.2d 859, *aff'd as modified* 260 Kan. 743, 926 P.2d 231 (1996), construed a statute substantially similar to K.S.A. 2001 Supp. 65-4163, which also contained the phrase "school property," and concluded there was no outright ownership requirement:

"K.S.A. 1993 Supp. 65-4127a(d) requires that the structure or property be used by a unified school district or accredited nonpublic school. The statute contains no ownership requirement. Had the legislature intended to adopt an ownership requirement, it could easily have done so. It is not the function of the court to rewrite a statute under the guise of interpretation. [Citation omitted.]

"Moreover, the legislature intended for the statute to protect children from the negative effects of drug use and drug dealing. [Citation omitted.] Children are exposed to those negative influences when drug deals are conducted near schools regardless of whether the school buildings are owned or leased by school districts." 21 Kan. App. 2d at 963.

This court expressly approved of that analysis on review. *State v. Prosper*, 260 Kan. 743, 747, 926 P.2d 231 (1996). It is important to note, however, that the school property in that case was leased by the unified school district. 21 Kan. App. 2d at 962.

K.S.A. 2001 Supp. 65-4163(b) clearly requires that the structure used for school purposes be located upon school property. The phrase "school property" implies something more specific than merely "property." Had the legislature intended otherwise it would

have used the term "property." See *Commonwealth v. Klusman*, 46 Mass. App. 919, 920, 708 N.E.2d 115 (1999) (Massachusetts law defining the crime of distributing marijuana within 1000 feet of a school not held to "require that 'the real property comprising a . . . school' be owned by the school. Nothing about this phrase suggests permanent ownership."). "School property," as it is used in K.S.A. 2001 Supp. 65-4163, requires that the unified school district or nonpublic school have some legal interest in the property upon which the structure is located. As the Court of Appeals held in *Prosper*, the legal interest can be something less than outright ownership, *i.e.*, a lease. But the property must be something more than a permissive right to use the property in order to rise to the level of "school property."

Cases from other states interpreting similar statutory language with a school ownership requirement are collected in Annot., *Validity, Construction, and Application of State Statutes Prohibiting Sale or Possession of Controlled Substances within Specified Distance of Schools*, 27 A.L.R.5th 593, pp. 667-68 (1995). The court in *State v. Belnavis*, 311 N.J. Super. 195, 709 A.2d 805 (1998), reversed a conviction for the possession of drugs with the intent to distribute within 1,000 feet of school property. The incident in *Belnavis* occurred in a parking lot near an "athletic field and facilities owned by the City of New Brunswick and used by the New Brunswick Board of Education for school activities." 311 N.J. Super. at 197. The *Belnavis* court described the agreement between the city and the school as a "relationship," not a lease. The New Jersey statute required, in part, a finding that the crime be committed on any "school property used for school purposes which is *owned by or leased to* any elementary or secondary school or school board." (Emphasis added.) 311 N.J. Super. at 198. The court found the athletic field did not meet the statutory requirements because there was no lease agreement and, therefore, reversed the conviction. 311 N.J. Super. at 199-200.

Similarly, we reverse the conviction in the present case because the State failed to establish that the drugs were sold within 1,000 feet of school property. While the Kansas statute does not contain the "owned by or leased to" language found in the New Jersey

statute, we find the phrase "school property" to have an equivalent meaning. The State presented sufficient evidence to meet its burden of proof as to the sale of marijuana. "Where a defendant has been convicted of the greater offense but evidence supports only a lesser included offense, the case must be remanded to resentence the defendant for conviction of the lesser included offense." *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993).

Last, Wilt argues the prosecutor committed misconduct by violating the trial court's motion in limine. Wilt complains of the following comment from the informant's testimony:

"Q. Okay. Who did you discuss the other drug dealings with?
"A. Justin and Kristen.
"Q. And what were those other drug dealings?
"A. About they had gotten in trouble a month or two before for acid and— (interrupted)"

At this point, an objection from Wilt's attorney was sustained.

With respect to the informant's comment that Wilt had "gotten in trouble a month or two before for acid," it cannot be said the State solicited the improper testimony. The State's question asked the informant to say whether she had discussed further drug dealing with Wilt and Roberts. While this may be interpreted to refer to prior drug dealing, the prosecutor made his question clear immediately following the sustained objection when the prosecutor asked whether the informant discussed "obtaining other drugs from Mr. Roberts or Mrs. Wilt." Thus, the prosecutor's question involved future drug dealing—a permissible subject because such evidence would support the State's aiding and abetting theory by showing how Wilt was involved in Robert's drug selling business. Further, a jury is presumed to disregard evidence to which an objection is sustained. *State v. Rice*, 261 Kan. 567, 592-93, 932 P.2d 981 (1997).

Later, at the beginning of the prosecutor's cross-examination of Wilt, the following exchange occurred:

"Q. Thirty days prior to July 2nd, Justin was picked up for possession of LSD, wasn't he?
"A. Yes.
"Q. And were you arrested at the same time for possession of LSD?

"MR. JOHNSON: Directly in violation of the Court's Order.

"THE COURT: It is. Ladies and Gentlemen, disregard Mr. Black's last question and the answer. Mr. Black, if you violate it again I'll declare a mistrial. You may continue with your examination."

The prosecutor's asking Wilt to tell the jury whether she had been arrested for possession of LSD was clearly improper. Before the State began presenting its evidence, and outside the presence of the jury, the trial court granted Wilt's motion in limine with the following specific instruction to the prosecutor:

"Mr. Black, you may ask the Court to release you from that motion before you close your case in chief, depending upon the tenor of questioning that may be offered by Mr. Johnston and if the Court denies it then and they offer evidence on behalf of the defense you may ask the Court to be released from it, depending upon the evidence that they present in their case in chief. But the Court would sustain the motion that at this point in time evidence of prior convictions or wrongdoings and the prejudicial effect of such matters would outweigh their probative value on the basis of the way the Court understands the case at this point in time. But we'll probably revisit that issue at a later time."

Thus, the prosecutor had no doubt the question was improper. Three factors are relevant when determining whether prosecutorial misconduct requires a new trial: (1) whether the misconduct was so gross and flagrant as to deny the accused a fair trial, (2) whether the remarks show ill will on the prosecutor's part, and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that it can be said that the prejudicial remarks of the prosecutor were likely to have little weight in the minds of the jurors. *State v. Heath,* 264 Kan. 557, 583, 957 P.2d 449 (1998).

The prosecutor's conduct was not so gross and flagrant to deny Wilt a fair trial. Wilt immediately objected to the question, and the objection was sustained. Further, the trial court admonished the jury to disregard the question. This court has held that a prosecutor's remarks that are objected to, followed by an admonition to disregard the remarks does not require a reversal unless the remarks are so prejudicial as to be incurable. See *State v. Edwards,* 264 Kan. 177, 196, 955 P.2d 1276 (1998) ("In fact, regarding improper comments by the prosecutor, we have held that where the jury has been instructed to disregard the remarks, there is no basis

for reversal unless the remarks were so prejudicial as to be incurable.") See also *State v. Foster*, 259 Kan. 198, 211, 910 P.2d 848 (1996) (applying the rule to a prosecutor's improper cross-examination of the defendant).

Whether the record shows ill will on the part of the prosecutor is a more difficult question. The prosecutor's question obviously disregarded the trial court's ruling on Wilt's motion in limine; however, the prosecutor did not continue to ask about improper matters following the objection. A one-line question in an 84-page trial transcript cannot amount to ill will.

Last, the question did not change the outcome of the trial. The question at trial involved whether Wilt knew Roberts was in the business of selling drugs. That Roberts actually sold marijuana to the informant was beyond dispute; the State used an aiding and abetting theory to link Wilt to the crime. Wilt admitted in her cross-examination that Roberts had been previously arrested for the possession of drugs with the intent to sell:

"Q. But [Roberts] was arrested with enough LSD on him to be convicted of possession with intent to sell, right?

"A. Yes, because he was convicted.

"Q. And he also had marijuana on him at the time, right?

"A. Yes

. . . .

"Q. So, at least thirty days prior to July 2nd, you knew [Roberts] was still in possession of drugs because he was arrested from your car, he was riding with you and you were driving it, right?

"A. Yes."

Wilt failed to object to these questions.

There was substantial evidence Wilt knew Roberts was dealing drugs; therefore, we can say beyond a reasonable doubt that the prosecutor's improper question regarding Wilt's arrest did not change the outcome of the trial. Wilt's argument fails.

Wilt's conviction for the sale of marijuana within 1,000 feet of school property is reversed, and the case is remanded to the district court with directions to resentence Wilt for the sale of marijuana.

Reversed and remanded.

DAVIS, J., not participating.
BRAZIL, S.J., assigned.