NOT DESIGNATED FOR PUBLICATION

No. 118,209

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN E. PEDERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed June 26, 2020.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lois Malin*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

BUSER, J.: Ryan E. Pederson appeals his conviction of aggravated assault in
violation of K.S.A. 2014 Supp. 21-5412(b)(2). Pederson contends there was insufficient
evidence to support his conviction because the State failed to prove that he was disguised
in any manner designed to conceal his identity when he committed the crime. Upon our
review, we find that a rational jury could conclude that Pederson was disguised in a
manner designed to conceal his identity by misrepresenting that he was a police officer or
bail bondsman searching for a wanted man in order to facilitate the commission of his

1

crime. Accordingly, we find there was sufficient evidence to support Pederson's aggravated assault conviction and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2015, Pederson entered Michel Gonzalez-Navarro's home by falsely impersonating that he was a police officer or bail bondsman attempting to locate an individual who failed to appear in court. After entering the home, Pederson had nonconsensual sexual intercourse with Gonzalez-Navarro's longtime romantic partner, S.G., while her children and Gonzalez-Navarro were downstairs with an accomplice. The State charged Pederson with rape, aggravated burglary, theft, and, most relevant to this appeal, aggravated assault of Gonzalez-Navarro.

During trial, Gonzalez-Navarro testified that he was in his front yard on March 5, 2015, when Pederson and another man began running towards him. Gonzalez-Navarro had never seen Pederson or the other man before this occasion. According to Gonzalez-Navarro, Pederson was dressed as a police officer and had a police badge. Because of the badge, Gonzalez-Navarro believed Pederson was a police officer.

After Pederson ran towards Gonzalez-Navarro, he pointed a gun at his head, showed him a picture of a man, and demanded to know where to find S.G. Gonzalez-Navarro was frightened when Pederson pointed the gun at him, and he was afraid that Pederson might hurt him. Gonzalez-Navarro had never seen the man in the picture, and he did not understand why Pederson was showing him the picture due to an English-Spanish language barrier between the two individuals.

Gonzalez-Navarro ran inside his home and woke up S.G. Gonzalez-Navarro told S.G. that people were looking for her and explained that he did not know what was happening. When Pederson was upstairs alone with S.G., Gonzalez-Navarro had a better

2

opportunity to observe the other man. After observing the other man's clothing, Gonzalez-Navarro realized that the men were not police officers.

S.G. also testified that Pederson was dressed as a police officer. She explained that Pederson was wearing black pants, a black shirt with a logo, and a belt. One of S.G.'s children, V.L., testified that the back of Pederson's shirt said "security or bounty or something like that." Based on Pederson's shirt, V.L. believed that Pederson and the other man were being paid to look for an individual or some object. In addition to Pederson's clothes, he carried a gun, a holster, handcuffs, a Taser, and a clipboard with a picture of a man.

Pederson told S.G. that he was looking for a man who resided in the house because the man did not show up for a court date. S.G. responded that nobody he was looking for lived in the house. Pederson insisted that everyone in the house go downstairs and, believing Pederson was a police officer, S.G. told her children to follow his orders. S.G. asked to see a warrant allowing entry into the home, but Pederson said his partner possessed it. While upstairs alone with S.G., Pederson said he needed to search her for weapons. Pederson then handcuffed S.G. and raped her. During a photo lineup, S.G. identified Pederson from his neck tattoos. Her children also noticed Pederson's neck tattoos while he was in their house.

Detective Romulo O'Reilly testified regarding his interview with Pederson, in which Pederson confessed that he went to Gonzalez-Navarro's house and intended to steal money or drugs. Pederson told the detective that he printed off a flier that pictured a random wanted man and pretended that he was a bail bondsman looking for him. Pederson said he wore a black shirt that said "Security" and featured a badge.

At trial, Pederson testified in his defense, claiming that he did not have a gun with him. While Pederson admitted that he brought a broken Taser, he said he did not wear a

3

police belt or bring handcuffs. Pederson confirmed that he wore a security shirt to disguise his identity. But Pederson did not wear a mask and did not attempt to cover his tattoos. As in his interview with Detective O'Reilly, Pederson admitted that he went to the house to steal drugs. Pederson also testified he intended to act like a bail bondsman, but he suggested that he did not dress like one.

The jury convicted Pederson of rape, aggravated burglary, and aggravated assault of Gonzalez-Navarro "while disguised in any manner designed to conceal identity." Pederson filed a motion for new trial, contending the State failed to prove that he disguised his identity because he never masked his features and did not provide a false name. The district court denied the motion, finding:

> "[T]he concealment of identity does not require Mr. Pederson or anyone else in a similar circumstance to hide his face. It's simply acting as someone he is not, and the testimony is clear that he was dressed in a manner and carrying a document and his claim was that he was a bondsman and looking for someone, so your motion for new trial will be denied."

After denying the motion for new trial, the district court sentenced Pederson to a controlling sentence of 221 months in prison. He appeals.

ANALYSIS

On appeal, Pederson contends there was insufficient evidence presented at trial to support his conviction of aggravated assault of Gonzalez-Navarro in violation of K.S.A. 2014 Supp. 21-5412(b)(2).

When the sufficiency of evidence is challenged in a criminal case, we review all evidence in the light most favorable to the State. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). The conviction will be upheld if we are convinced that a rational

fact-finder could have found the defendant guilty beyond a reasonable doubt based on that evidence. In determining whether there is sufficient evidence to support a conviction, we generally do not reweigh the evidence or reassess witness credibility. 307 Kan. at 668. Additionally, to the extent that the issue requires interpretation of statutes, statutory interpretation is a question of law over which we exercise unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

The jury convicted Pederson of aggravated assault in violation of K.S.A. 2014 Supp. 21-5412(b)(2). This subsection provides that aggravated assault includes knowingly placing another person in reasonable apprehension of immediate bodily harm "while disguised in any manner designed to conceal identity." K.S.A. 2014 Supp. 21-5412(b)(2).

Pederson does not contest that he knowingly placed Gonzalez-Navarro in reasonable apprehension of immediate bodily harm. Instead, Pederson asserts that the State's evidence was legally insufficient to prove that he was disguised in any manner designed to conceal his identity. Pederson's argument revolves around the word identity, which he defines as an individual's personal characteristics, personality, or attributes. Pederson suggests that even though he misrepresented his occupation by dressing as a policeman or bail bondsman, his outfit was not designed to conceal his identity because his face and tattoos were left uncovered which allowed identification of his personal characteristics.

To determine whether Pederson was disguised in any manner designed to conceal identity, we must interpret the meaning of that phrase as used in K.S.A. 2014 Supp. 21-5412(b)(2). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a

5

statute is plain and unambiguous, we do not speculate about the legislative intent behind that clear language, and we refrain from reading something into the statute that is not readily found in its words. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

Although criminal statutes are generally strictly construed against the State, this principle is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate the legislative design and the true intent of the law. *State v. Gensler*, 308 Kan. 674, 680, 423 P.3d 488 (2018). When construing statutes to determine legislative intent, we must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. We must construe statutes to avoid unreasonable or absurd results and we presume the Legislature does not intend to enact meaningless legislation. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015).

The Kansas Criminal Code does not define the phrase "disguised in any manner designed to conceal identity" as it is used in K.S.A. 2014 Supp. 21-5412(b)(2). Additionally, we were unable to locate any prior Kansas case which has interpreted this phrase. When a statute fails to define its terms, we assume the words bear their "'ordinary, contemporary, common meaning.'" *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). "Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." 306 Kan. at 851.

Black's Law Dictionary defines disguise as "1. Apparel worn to conceal one's identity. 2. The application of a façade to misrepresent the true nature of a thing. 3. The act of concealment or misrepresentation." Black's Law Dictionary 588 (11th ed. 2019). Pederson acknowledges that he disguised himself in any manner by wearing clothes and engaging in conduct intended to misrepresent that he was a police officer or bail

6

bondsman. However, Pederson claims this disguise was not designed to conceal his identity.

The term conceal is defined as: "1 to put out of sight; hide" and "2 to keep from another's knowledge; keep secret." Webster's New World College Dictionary 307 (5th ed. 2014). Black's Law Dictionary defines identity as:

"1. Sameness in essential attributes; the condition of being the very same thing as has been described or asserted. 2. The selfsame nature of two or more things . . . . 3. The distinguishing personality or attributes of an individual. 4. More generally, the qualities and attitudes that a person or group of people have, differentiating them from others. 5. *Evidence*. The authenticity of a person or thing." Black's Law Dictionary 894 (11th ed. 2019).

Another dictionary defines identity as:

"1. the condition or fact of being the same or exactly alike; sameness; oneness [groups united by *identity* of interests] 2. *a*) the condition or fact of being a specific person or thing; individuality *b*) the characteristics and qualities of a person, considered collectively and regarded as essential to that person's self-awareness *c*) the condition of being the same as a person or thing described or claimed." Webster's New World College Dictionary 722 (5th ed. 2014).

The parties rely on similar dictionary definitions and agree that a disguise is "designed to conceal identity" when it is intended to prevent recognition of an individual's personal characteristics or attributes. However, the parties dispute what personal characteristics or attributes that a disguise must be designed to conceal to fall within the scope of K.S.A. 2014 Supp. 21-5412(b)(2). Pederson argues that he misrepresented his occupation but did not prevent recognition of his identity because he did not conceal his face, tattoos, or other distinguishing physical features that could be used to identify him. The State counters that Pederson disguised himself as someone with

authority to enter Gonzalez-Navarro's home to search for a wanted person. In this way, Pederson concealed his identity as a person without such authority—a burglar—who planned to unlawfully enter the home to commit a theft and/or rape.

When considering similar statutory language, Florida courts have found that an individual conceals his or her identity by either (1) preventing recognition of identifiable features or (2) using a disguise to facilitate the commission of a crime. See *Clark v. State*, 234 So. 3d 809, 813 (Fla. Dist. Ct. App. 2018); *Fletcher v. State*, 472 So. 2d 537, 540 (Fla. Dist. Ct. App. 1985). Florida law provides for a penalty enhancement for a crime "if, while committing the offense, the offender was wearing a hood, mask, or other device that concealed his or her identity." Fla. Stat. § 775.0845 (2009). In *Fletcher*, the defendant and another man dressed themselves as women and solicited an automobile ride from a man who thought they were female prostitutes. Once in the vehicle, Fletcher and the other man committed an attempted robbery of the vehicle owner. At trial, the jury found that Fletcher committed the offense while wearing devices that concealed his identity and, therefore, the penalty enhancement in Fla. Stat. § 775.0845 applied.

On appeal, Fletcher argued that he did not conceal his identity because evidence showed he was known in the area to dress as a woman. The *Fletcher* court rejected this argument, noting that "the statute is aimed at criminals who employ devices either to make witnesses' identifications of them difficult *or to otherwise facilitate the commission of a crime*. This may include covering up one's face; or altering one's appearance by disguise or costume." (Emphasis added.) 472 So. 2d at 540. Because a reasonable jury could have inferred that Fletcher's disguise was used to facilitate his criminal behavior, the *Fletcher* court held that the trial court did not err by allowing the jury to consider the penalty enhancement of Fla. Stat. § 775.0845. 472 So. 2d at 540.

Like the *Fletcher* court's interpretation of the Florida statute, we find that an offender is "disguised in any manner designed to conceal identity" under K.S.A. 2014

Supp. 21-5412(b)(2) when the offender is disguised to (1) prevent recognition of identifiable features by witnesses or (2) misrepresent the offender's qualities, characteristics, or attributes to facilitate the commission of the crime. This statutory construction is in line with the dictionary definitions of conceal and identity, which contemplate keeping an individual's attributes or qualities from another person's knowledge. And interpreting this subsection to increase punishment for disguising oneself to facilitate the commission of the offense is reasonable given the enhanced culpability of such conduct. See *State v. Nobles*, 329 N.C. 239, 243, 404 S.E.2d 668 (1991) (finding that the defendant's crime of child abduction was "particularly egregious [because] the defendant disguised herself as a nurse and used this disguise to abduct the baby").

Moreover, interpreting K.S.A. 2014 Supp. 21-5412(b)(2) to include misrepresenting an individual's attributes—such as falsely disguising oneself as someone in a position of authority—best comports with the broad language used in the subsection. Unlike K.S.A. 2014 Supp. 21-5412(b)(2), which covers committing an assault while disguised *in any manner* designed to conceal identity, similar statutes in other states use more restrictive language limited to coverage of identifiable physical features. For example, Illinois' aggravated assault statute includes committing assault while one "[w]ears a hood, robe, or mask to conceal his or her identity." 720 Ill. Comp. Stat. 5/12-2(c)(4) (2020). Because K.S.A. 2014 Supp. 21-5412(b)(2) is not limited to disguising a person's physical features, we refuse to adopt Pederson's narrow understanding of the phrase "disguised in any manner designed to conceal identity."

Having found that falsely representing one's characteristics to facilitate the commission of the crime amounts to concealing identity under K.S.A. 2014 Supp. 21-5412(b)(2), we hold the State presented sufficient evidence to support Pederson's conviction of aggravated assault of Gonzalez-Navarro. The evidence in the light most favorable to the State shows that Pederson was dressed like a police officer or bail

9

bondsman and misrepresented that he had the legal authority to search Gonzalez-Navarro's home for a man who failed to appear in court. Pederson wore an all-black outfit with a badge logo on the shirt while carrying a gun, handcuffs, a Taser, and a photograph of the supposedly wanted man. Pederson's disguise was intended to conceal his identity as a burglar who intended to illegally enter the Gonzalez-Navarro's home.

While disguised as a police officer or bail bondsman, Pederson pointed a gun at Gonzalez-Navarro's head and demanded to know where to find S.G. By misrepresenting his authority, Pederson's disguise was also designed to facilitate the commission of his assault on Gonzalez-Navarro by ensuring compliance, preventing retaliation, and discouraging attempts to contact law enforcement. Since Pederson's disguise was intended to misrepresent his true characteristics to facilitate the commission of his crimes, a reasonable jury could conclude that Pederson was disguised in a manner designed to conceal his identity.

Viewing the evidence in the light most favorable to the State, a rational fact-finder could have found Pederson guilty of aggravated assault in violation of K.S.A. 2014 Supp. 21-5412(b)(2) by placing Gonzalez-Navarro in reasonable apprehension of immediate bodily harm "while disguised in any manner designed to conceal identity." Accordingly, we hold there was sufficient evidence to support Pederson's conviction of aggravated assault in violation of K.S.A. 2014 Supp. 21-5412(b)(2).

Affirmed.

* * *

ATCHESON, J., dissenting:  The State failed to prove Defendant Ryan Pederson committed an aggravated assault of Michel Gonzalez-Navarro because he did not, contrary to the charge, disguise himself in a way designed to conceal his identity. The majority essentially expands the statute criminalizing that form of aggravated assault

10

beyond the meaning of its language—deviating from both the apparent legislative intent and the canon of construction favoring strict interpretation of criminal statutes against the State. I, therefore, respectfully dissent from the majority's decision to affirm Pederson's aggravated assault conviction.

Pederson was, however, guilty of the simple assault of Gonzalez-Navarro, a misdemeanor rather than a felony—a point he more or less tacitly concedes on appeal. I would reverse the conviction for aggravated assault and remand with directions that Pederson be convicted of simple assault and sentenced accordingly. See *State v. Wilt*, 273 Kan. 273, 278, 44 P.3d 300 (2002) (If the evidence presented at trial is insufficient to establish an element of the offense of conviction, the defendant may nonetheless be convicted and sentenced for a lesser included offense supported in the evidence even though the factfinder may not have considered that lesser offense.); *State v. Harris*, 46 Kan. App. 2d 848, Syl. ¶ 7, 264 P.3d 1055 (2011). That would be an exercise devoid of practical significance, since Pederson has not challenged his convictions for rape and aggravated burglary and received a much shorter concurrent sentence on the aggravated assault conviction.

Here, the evidence showed that Pederson dressed in a manner loosely consistent with a law enforcement officer or a bail-bond agent. He wore a shirt with the legend "Security" on it to which he affixed a badge; a duty belt that included handcuffs, a holster, and what turned out to be an inoperative Taser; and a ball cap that may or may not have had an insignia. Pederson carried a clipboard with official looking papers purportedly identifying a fugitive. But Pederson did not in any way attempt to cover his face or obscure several of his tattoos.

Pederson claimed to be searching for the fugitive as a ruse to enter Gonzalez-Navarro's house to steal drugs or other valuables, and his getup was an integral part of

facilitating his planned theft. Once inside, Pederson also sexually assaulted a woman, resulting in the rape conviction.

As Pederson approached the house, Gonzalez-Navarro resisted his demand to enter and search. Pederson drew the Taser and pointed it at Gonzalez-Navarro who perceived it to be a dangerous weapon and in reasonable apprehension of bodily harm then yielded.

As criminalized in K.S.A. 2014 Supp. 21-5412(a), misdemeanor assault is "knowingly placing another person in reasonable apprehension of immediate bodily harm." Pertinent here, misdemeanor assault may be elevated to felony aggravated assault in any one of three circumstances: (1) the crime is committed with a "deadly weapon"; (2) the perpetrator acts "while disguised in any manner designed to conceal identity"; or (3) the perpetrator assaults the victim "with intent to commit any felony." K.S.A. 2014 Supp. 21-5412(b). The prosecutor chose to charge the aggravated assault based on K.S.A. 2014 Supp. 21-5412(b)(2) on the theory Pederson had used a disguise to conceal his identity.[1]

[1]It's not for me to second-guess the State's charging decision. But the evidence, including Pederson's inculpatory statements to a detective, seem to support a charge under the third aggravating factor. Pederson told the detective he intended to enter the residence to steal drugs or money; that constitutes burglary, a felony. See K.S.A. 2014 Supp. 21-5807(a)(1). Also, whether a defendant has used a "deadly weapon" satisfying the first aggravating factor depends on the reasonable perception of the victim. See *State v. Deutscher*, 225 Kan. 265, 271-72, 589 P.2d 620 (1979); *State v. Bulk*, No. 114,462, 2016 WL 7494359, at *6 (Kan. App. 2016) (unpublished opinion). So if Gonzalez-Navarro reasonably thought what Pederson brandished was a deadly weapon, then Pederson would be guilty of aggravated assault under K.S.A. 2014 Supp. 21-5412(b)(1). The State could have charged Pederson in the alternative under two or all three of those subsections.

To resolve this issue, the majority wonders far and wide across the linguistic universe in sizing up the meanings of "disguise" and "identity." The majority notes

definitions for identity that range from "the sameness of essential attributes" among constituents in a group, thus giving them a common identity, to more metaphysical notions of "characteristics and qualities" of a person "regarded as essential to self-awareness." Slip op. at 7. All of that is curious and seems rather plainly beside the point to K.S.A. 2014 Supp. 21-5412(b)(2) and its treatment of a defendant using a disguise to conceal his or her identity while assaulting someone.

Identity in that statute refers to facial features and other physical attributes permitting the determination of who perpetrated the assault—not some quality of the perpetrator's self-awareness. Basically, identity entails what would allow the victim to pick the perpetrator out of a lineup or to say during a trial that the defendant committed the assault. And a misdemeanor assault should be elevated to felony aggravated assault when the perpetrator takes steps to confound that process of identification. That's the plain meaning of the statutory language. Even if there were some question about the meaning, criminal statutes should be construed strictly against the State and in favor of the accused. See *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012); *State v. Bannon*, 55 Kan. App. 2d 259, 265, 411 P.3d 1246 (2018). The rule of strict construction bends to avoid a wholly unreasonable result or a clear derogation of legislative intent. Neither of those exceptions applies here.

Historically, statutes enhancing charges and resulting punishments for assaults the perpetrators carry out in disguise or while masked were aimed at the Ku Klux Klan, night riders, and similar groups that sought to intimidate and terrorize African-Americans and other minorities. See, e.g., 42 U.S.C. § 1985(3) (2016) (commonly known as the Ku Klux Klan Act of 1871). Some of the statutes from other states the majority cites describe the disguises with sufficient particularity that one of the unmistakable purposes is to reach that sort of conduct. The language in K.S.A. 2014 Supp. 21-5412(b)(2) is more generic. The Legislature, however, recognized that a realistic threat of immediate physical harm was all the more threatening and pernicious when the perpetrator has taken steps to avoid

13

being identified and prosecuted and, therefore, should be punished more harshly for that reason. Similar considerations animate enhancing an assault carried out with a deadly weapon—the victim's distress and fear typically will be compounded.

Having both finished its linguistic journey and offered a review of a few statutes and a little caselaw from other jurisdictions, the majority pronounces that K.S.A. 2014 Supp. 21-5412(b)(2) really establishes two criteria for elevating a simple assault from a misdemeanor to a felony. The first is when a defendant commits an assault in disguise to "prevent . . . recognition by witnesses." Slip op. at 8-9. That's the one actually found in the statutory language, and the one that doesn't cover what Pederson did in assaulting Gonzalez-Navarro. The second is when the disguise serves to "misrepresent the offender's qualities, characteristics, or attributes to facilitate the commission of the crime." Slip op. at 9. That one cannot be found in a strict reading of statutory language, and it's hard to discern even in a loose interpretation of the words.

In short, there is no "facilitating the crime" ground in K.S.A. 2014 Supp. 21-5412(b)(2) enhancing a simple assault to an aggravated assault. To say otherwise, as the majority does, adds something not obviously found in the Legislature's language, contravening the strict construction canon for criminal statutes. It also runs counter to the more general canon against adding judicial embroidery to what the Legislature has already tailored. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007); *State v. Bryan*, 281 Kan 157, 159, 130 P.3d 85 (2006) (statute should not be read to add language not found there). Had the Legislature wanted to include a criminal facilitation component to the disguise criterion, it knows how to say so. The kidnapping statute, thus, criminalizes the "taking or confining of any person" by force or other means when done, among other things, "to facilitate flight or the commission of any crime." K.S.A. 2014 Supp. 21-5408(a)(2).

14

Finally, the majority's augmentation of K.S.A. 2014 Supp. 21-5412(b)(2) is largely duplicative of subsection (b)(3) that elevates a simple assault to aggravated assault when the perpetrator has acted with the "intent to commit any felony." An assault undertaken to commit a felony would be done to facilitate that crime—whether the perpetrator was disguised or not. As I have indicated, Pederson assaulted Gonzalez-Navarro to carry out his planned burglary of the house, so the State could have charged him with aggravated assault under K.S.A. 2014 Supp. 21-5412(b)(3). To trowel over the State's seemingly errant charging decision the majority simply expands the language of K.S.A. 2014 Supp. 21-5412(b)(2) to swallow up much of subsection (b)(3). I respectfully dissent from that endeavor.