(890 P.2d 368)
No. 70,636

STATE OF KANSAS, *Appellee,* v. ARTIS SWAFFORD, *Appellant.*

Opinion filed February 24, 1995.

*Jean K. Gilles Phillips*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Julie McKenna*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, C.J., ELLIOTT, J., and STEPHEN D. HILL, District Judge, assigned.

BRISCOE, C.J.: Artis Swafford appeals his convictions of two counts of sale of cocaine within 1,000 feet of a school, K.S.A. 65-4127a(c) (now K.S.A. 1993 Supp. 65-4127a[d]).

Lamar Williams approached the police and offered to be a confidential informant. The police provided Williams with an apartment that was wired with video and audio tape recorders. The police had contacted a real estate broker and rented the first apartment that was offered. The apartment was within 1,000 feet of a school. The police officer who rented the apartment testified that he knew there was a school in the area, but he did not know it was within 1,000 feet of the apartment when he rented it.

Williams and Swafford discussed a drug deal at a local club, and Williams agreed to purchase $350 in rock cocaine from Swafford. They went to Williams' apartment where Williams purchased $150 in rock cocaine from Swafford because that was all that Swafford had. The next day, Swafford came to the apartment and offered to sell Williams more cocaine. Williams bought $350 in rock cocaine. Both transactions were recorded.

Swafford was charged with two counts of sale of cocaine, and when it was discovered the apartment was within 1,000 feet of a school, the complaint was amended.

*Knowledge of School within 1,000 feet*

Swafford was convicted of class B felonies under K.S.A. 65-4127a(a) and (c). Under 65-4127a(a), possession, offering to sell, sale, or distribution of cocaine and other narcotic drugs is a class C felony if it is a first offense. K.S.A. 65-4127a(c) provides:

"Notwithstanding any other provision of law, upon conviction of any person for a first offense pursuant to subsection (a), such person shall be guilty of a class B felony if such person is over 18 years of age and the substances involved were possessed with intent to sell, sold or offered for sale in or on, or within 1,000 feet of any school property upon which is located a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades 1 through 12."

Swafford contends one of the essential elements of sale of cocaine within 1,000 feet of a school is knowledge that the place of the sale is within 1,000 feet of a school, and that the jury instruction defining the crime was incorrect because it omitted that element. Although Swafford did not object to the instruction given, under K.S.A. 22-3414(3), a contemporaneous objection is not required to preserve the issue for appeal if the instructions are "clearly erroneous." See *State v. Deavers,* 252 Kan. 149, 164, 843 P.2d 695 (1992), *cert. denied* 125 L. Ed. 2d 676 (1993). Omission of an essential element of the crime from the instruction would be clearly erroneous.

Whether knowledge of the proximity of a school is an essential element of 65-4127a(c) is an issue of statutory construction, which is a question of law on which a reviewing court is not bound by the decision of the lower court. See *State v. Donlay,* 253 Kan. 132, 133-34, 853 P.2d 680 (1993). The issue is not whether the statute creates an absolute liability offense with no intent or knowledge element; 65-4127a(c) applies only when all elements of the statute, including an intent element, have been proved. See *State v. Josenberger,* 17 Kan. App. 2d 167, 172-73, 836 P.2d 11, *rev. denied* 251 Kan. 941 (1992). Consequently, the general rule that an intent element will be read into all crimes unless the legislature clearly intended otherwise (see *State v. Jones,* 242 Kan. 385, 391-92, 748 P.2d 839 [1988]) is inapplicable. The issue is

whether the legislature intended to require proof of knowledge of the proximity of a school in addition to proof of intent to sell cocaine to establish a violation of 65-4127a(c).

In *State v. Robinson*, 239 Kan. 269, 271, 718 P.2d 1313 (1986), the court stated:

"Whether or not criminal intent or knowledge is an element of a statutory crime depends on the will of the legislature. Legislative intent is a matter of statutory construction, to be determined in a given case from consideration of the language of the statute in connection with the subject matter of the prohibition, the statute's manifest purpose and design, and the consequences of the several constructions to which the statute may be susceptible. The omission of the word 'knowingly' from the statute defining the crime is not conclusive as to whether or not guilty knowledge is an essential element of the crime."

Here, the statute does not expressly require proof of knowledge of the proximity of a school. The substance of the statute and the legislative history cited by Swafford show that 65-4127a(c) was modeled after similar statutes enacted in many other jurisdictions. The original model is the federal "schoolyard statute," 21 U.S.C. § 860 (1990) (formerly 21 U.S.C. § 845a [1988]). It provides that anyone who violates 21 U.S.C. § 841(a)(1) (1988) by distributing, possessing with intent to distribute, or manufacturing a controlled substance in, on, or within 1,000 feet of school property is subject to imprisonment for up to twice that authorized for a violation of 21 U.S.C. § 841(a)(1). It is similar in language and structure to 65-4127a(c).

In *United States v. Falu*, 776 F.2d 46 (2d Cir. 1985), the court held that the schoolyard statute did not require proof that a drug trafficker had knowledge of the proximity of a school and concluded that a knowledge requirement would be contrary to the purpose of the statute disclosed by the legislative history. The court held that "a requirement that the dealer know that a sale is geographically within the prohibited area would undercut this unambiguous legislative design." The court concluded that although "some schools are not clearly recognizable as such from all points within the 1,000-foot radius, Congress evidently intended that dealers . . . bear the burden of ascertaining where schools are located and removing their operations from those areas or else face enhanced penalties." 776 F.2d at 50.

The legislative history cited by Swafford reveals that, like the federal schoolyard statute on which it was modeled, 65-4127a(c) was intended to create drug-free school zones. It was designed to protect young people from drug use and the violence and other negative influences that accompany drug dealing. Children are exposed to these negative influences when drug deals are conducted near schools regardless of whether the dealers know they are within 1,000 feet of a school.

Requiring proof that Swafford knew a school was within 1,000 feet could impose an onerous burden on police and prosecutors, which would be contrary to the clear purpose of the statute. Swafford's knowledge of the proximity of a school is not an essential element of the crime of selling cocaine within 1,000 feet of a school under 65-4127a(c).

*Entrapment*

Swafford contends that by setting up the drug deals within 1,000 feet of a school, the police engaged in outrageous conduct that entrapped him into committing more serious class B felonies. He argues the police conduct was so outrageous that it constituted entrapment as a matter of law and that his convictions should be reclassified as class C felonies.

The defense of outrageous government conduct is an offshoot of entrapment and is based on an intolerable degree of governmental participation in the criminal enterprise. Governmental participation in a criminal enterprise reaches an intolerable degree when it constitutes a denial of fundamental fairness "shocking to the universal sense of justice" contrary to the Due Process Clause. *State v. Van Winkle*, 254 Kan. 214, 216-17, 864 P.2d 729 (1993), *cert. denied* 114 S. Ct. 2168 (1994). Whether the government's conduct is sufficiently outrageous is a question of law and depends on four factors: the type of criminal activity involved, whether the activity is preexisting or instigated by the government, whether the government directs the activity or merely participates in it, and the causal link between the governmental conduct and the defendant's acts. A defendant's predisposition to commit the crime bars the use of the outrageous government conduct defense. 254 Kan. at 219-20.

Swafford does not argue that the police instigated the sales of cocaine or that he lacked a predisposition to sell cocaine. He argues only that the police instigated or caused the sales to take place near a school and that he lacked a predisposition to sell cocaine near a school. Drug crimes require that the police be allowed flexibility in tactics. The use of informants to infiltrate drug operations is a recognized and permissible tactic, even when the informant engages in some criminal activity or supplies something of value to the criminal enterprise, such as an essential ingredient for the manufacture of drugs. *Van Winkle*, 254 Kan. at 220. The mere fact that the government created one of the essential elements of the crime by setting up drug deals within 1,000 feet of a school does not by itself constitute outrageous conduct.

Case law suggests this could be outrageous conduct only if the government acted with the sole or principal purpose of increasing the severity of the crime. In *U.S. v. Swanson*, 952 F.2d 175 (8th Cir. 1991), *cert. denied* 120 L. Ed. 2d 914 (1992), the defendant argued he was entrapped in violation of his due process rights because an undercover officer set up heroin deals at an informant's house, which was within 1,000 feet of a school. Although the defendant was precluded from raising the defense on appeal because he had not raised it below, the court stated that even if the defendant had raised the defense, "it does not appear that McCabe's home was selected as the site of the heroin deals in order to be within 1,000 feet of a school. Instead, this site was chosen because McCabe was the link between Swanson and the undercover officer." 952 F.2d at 177.

Here, although the police set up the drug deals within 1,000 feet of a school, there was no evidence that their purpose was to increase the severity of the crimes. It was uncontroverted that they did not know the apartment was within 1,000 feet of a school until after the transactions were completed and the defendant was arrested. The police action did not constitute outrageous conduct or entrapment as a matter of law.

*Refusal to grant mistrial*

Swafford contends the trial court erred in refusing to grant a mistrial after a witness referred to a murder with which Swafford

had been charged. In the alternative, he contends the trial court erred in refusing to admonish the witness to refrain from referring to the murder.

Williams testified on cross-examination that the police had agreed to pay him more money for arranging big drug deals. When counsel asked what would be a big drug deal, Williams replied there had been no big drug deals because the undercover operation was shut down "after . . . the murder took place." Counsel requested a mistrial, which the trial court denied on the ground that the witness' answer was not "inappropriately non-responsive." In response to the first question asked after the denial of the mistrial, the witness again said that the murder prevented any big drug deals, but there was no objection to this answer. The witness referred to the murder a third time in response to a question about whether he had any further conversations with Swafford: "I talked to him . . . about the day after the murder, the same day the murder took place I talked to him about that." Counsel requested that the court admonish the witness to stop referring to the murder. The court denied the request, noting that the witness was using the murder as a bench mark to remember when he had conversations with Swafford, that the witness did not implicate Swafford in the murder, and that counsel had invited the responses.

The decision to declare a mistrial is left to the discretion of the trial court. The defendant has the burden of showing substantial prejudice from failure to declare a mistrial before an appellate court will find an abuse of discretion by the trial court. *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992). Swafford has not shown substantial prejudice. As the trial court noted, the witness' statements did not implicate Swafford. They referred only to the fact of the murder. The references to the murder were not so prejudicial that it was an abuse of discretion to deny a mistrial.

Moreover, a litigant cannot invite error and then complain of the trial court's action on appeal. See *State v. Prouse*, 244 Kan. 292, 298-99, 767 P.2d 1308 (1989). The first two references to the murder, although perhaps not invited by the wording of coun-

sel's question, should have come as no surprise because Williams gave the same answer to the same question at the preliminary hearing. When asked whether he arranged any big drug deals for the police, Williams answered that none were carried out because "the homicide took place." The witness' final reference to the murder was invited by defense counsel's question about further conversations with Swafford after the two drug deals. In response to a similar question by the prosecution at the preliminary hearing, Williams had testified that Swafford had admitted his involvement in the murder in a conversation shortly after the second drug deal. Any question about this conversation would raise Swafford's involvement in the murder.

Nor was the trial court's refusal to admonish the witness to stop referring to the murder reversible error. A trial court has broad discretion to control the examination of witnesses, and reviewing courts will not interfere unless discretion has been abused. See *State v. Mitchell,* 234 Kan. 185, 188, 672 P.2d 1 (1983). Defense counsel did not disagree when the court stated its assumption that Swafford was finished with the line of questioning that elicited the references to the murder. An admonition would have served no purpose if that line of questioning was concluded. The trial court's refusal to admonish the witness did not impair counsel's ability to inquire about the relationship between Swafford and Williams. Any error was harmless.

*Cross-examination of Informant*

Swafford contends the trial court improperly limited cross-examination of the informant concerning their relationship, thereby impairing his ability to establish entrapment. The trial court has broad discretion in controlling cross-examination, and Swafford has not shown that the trial court's limitation of cross-examination was an abuse of discretion. See *State v. Harmon,* 254 Kan. 87, 95, 865 P.2d 1011 (1993).

The court cut off cross-examination only when counsel asked about conversations that occurred after the two drug deals. These conversations could not have been relevant to the entrapment defense and would almost certainly have raised Swafford's in-

volvement in the murder. The record reveals that Swafford was able to inquire into Williams' relationship with him, both on cross-examination and later by calling Williams as a defense witness. Defense counsel examined Williams about when he first met Swafford, how well he knew him, how often they met, where they met, what they did together, and what they talked about.

Affirmed.