IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,378

STATE OF KANSAS,
*Appellee*,

v.

DAISHA BUTLER,
*Appellant*.

SYLLABUS BY THE COURT

1.

When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.

2.

Under K.S.A. 21-5601(b)(1), the phrase "child under the age of 18 years" designates a protected class of victims, meaning the State must prove only the fact of the victim's age and is not required to prove the defendant knew the victim was a minor. The culpable mental state of recklessness applies only to the defendant's endangering conduct, not to the victim-classification element.

3.

Under K.S.A. 22-3423(1)(c), a district court may declare a mistrial only after determining that alleged misconduct caused a fundamental failure in the proceeding and,

if so, that the resulting prejudice is incurable and makes continuing the trial unjust. A district court's decision to deny a motion for mistrial is reviewed for abuse of discretion.

4.

Courts evaluate instructional error by determining whether the issue is reviewable, whether the instruction was legally and factually appropriate, and whether any error was harmless.

5.

Under K.S.A. 21-5222, self-defense requires (a) a subjective honest belief that force, including deadly force, is necessary to prevent imminent unlawful harm, and (b) an objective showing that a reasonable person in the defendant's circumstances would share that belief.

6.

A defendant who willingly engages in mutual combat cannot justify a killing on grounds of self-defense unless he or she withdraws in good faith and does everything in his or her power to avoid the necessity of killing. Mutual combat occurs when both parties voluntarily engage in a fight and share a common intent to fight; it does not depend on who initiated the confrontation.

7.

The right to self-defense is not automatically extinguished in all mutual combat cases, but for self-defense to justify the killing, the defendant must be acting solely for the protection of the defendant's own life, and not to inflict harm upon the defendant's adversary.

8.

Cumulative trial errors, considered collectively, may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. Unpreserved instructional errors that are not clearly erroneous may not be aggregated as cumulative error.

Appeal from Shawnee District Court; BRETT WATSON, judge. Oral argument held October 27, 2025. Opinion filed January 9, 2026. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi Litfin*, deputy district attorney, argued the cause, and *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  This is Daisha Butler's direct appeal from her convictions for first-degree felony murder and aggravated endangering a child. Those convictions stem from the shooting death of 17-year-old N.M. On appeal, Butler challenges the sufficiency of the evidence, claims the district court erred in denying her motion for mistrial, alleges several instances of instructional error, and argues cumulative error requires reversal of her convictions. For the reasons discussed below, we affirm Butler's convictions. The evidence was sufficient to support Butler's convictions, the district court did not abuse its discretion in denying her motion for mistrial, and two jury instruction errors were harmless. Given the strength of the evidence and the harmless nature of each error, Butler is not entitled to relief under the doctrine of cumulative error.

3

On the evening of July 3, 2021, law enforcement officers responded to a possible shooting at 11th and Clay in Topeka. At the scene, officers observed a young female lying in the street with a gunshot wound to her head. The victim, identified as 17-year-old N.M., died from the injury.

The police questioned four females who were standing nearby. The police later spoke to other witnesses in the area. Law enforcement's investigation revealed that two groups of females had been fighting during the day leading up to N.M.'s death that evening. The first group included N.M. and her friends—sisters Taleyah Johnson and A.H., and their cousin Q.J. The second group included Butler and her friends—sisters Aja Morris, Carmel Brown, and L.M. Several of these witnesses provided different details about the events of the evening. The following is an attempt to combine this information into a cohesive narrative.

On the afternoon of July 3, the first group was together when A.H. learned that her mother had been involved in an altercation with Morris and Brown. Upset about the altercation, A.H. exchanged messages with Morris and Brown, and they argued back and forth about meeting up to fight. That evening, the first group got a ride to Brown's house. Upon arrival, they saw Brown and her grandmother on the porch and heard Brown make a phone call, telling someone to bring a "strap," meaning a gun. A.H. got into a physical altercation with Brown's grandmother, and then L.M. got involved and began fighting with A.H.

Shortly thereafter, Morris, Butler, and Butler's brother, Daleon (who was also Morris' boyfriend), arrived at the house by car. They had three small children with them, including Butler's three-year-old daughter. After the children went inside the house, more

4

fighting broke out; Morris and Brown began punching A.H., and Butler and Johnson also exchanged blows. The fighting stopped and then started again between members of both groups.

By all accounts, after the fights finally broke up, the first group (Johnson, A.H., Q.J., and N.M.) walked away from the house and members of the second group (Butler, Brown, Morris, and Daleon) followed behind. The groups continued to trash talk and argue back and forth. Q.J. believed that someone in the second group had a gun. Some in the first group heard Butler threatening to pistol whip them.

After walking a couple of blocks, Johnson realized she had lost her phone during the fight, so the first group turned down a nearby alleyway to go back to the house to retrieve the phone. While the second group continued to follow them, a gunshot was fired into the air. Most of the first group started running. A minute or two later, another shot was fired from behind the first group. N.M. fell to the ground, bleeding from the head.

Law enforcement's investigation led them to identify Butler as the shooter, and a detective interviewed her the morning after the shooting. Butler initially denied involvement in the fights the previous night, claiming she was just hanging out with her friends and trying to break up the fights. She later said that when she arrived at Brown's house, "females" she did not know started jumping her, so she had to use "protection" because her daughter was there. Butler denied following the unknown females after they left the house but eventually admitted to shooting her gun when they "came back around." At first, Butler said she fired her gun twice but then maintained throughout the rest of the interview that she only fired it once in the air to scare everyone off. Butler claimed she was trying to protect herself and her daughter because she felt threatened. After being told that N.M. was going to die, Butler suggested that she was not the only one who had a gun. Butler denied pointing her gun at anyone, trying to shoot anyone, or

5

shooting at N.M. Butler said she did not know where her gun was and could not remember if she had given it to anyone.

The State charged Butler with first-degree premeditated murder, first-degree felony murder, aggravated endangering a child, and reckless second-degree murder. To support the felony-murder charge, the State alleged Butler killed N.M. while committing the inherently dangerous felony of aggravated endangering a child, 17-year-old N.M.

The case proceeded to a jury trial, where the State presented the evidence outlined above, in addition to the following relevant evidence tying Butler to the crimes:

- On March 5, 2021, a few months before the shooting, Butler legally purchased a 9-millimeter handgun. On March 26, 2021, law enforcement encountered Butler. During the encounter, law enforcement collected Butler's gun and, under police protocol, test-fired it to obtain shell casings in the event they would later be needed as evidence. The gun was released back to Butler on May 11, 2021.

- Although law enforcement failed to locate Butler's gun after the shooting, they did find a spent shell casing at the scene and, comparing the test-fired shell casings, determined that it had been fired from Butler's gun. Primer gunshot residue was detected on Butler's hands.

- A.H. testified that after the first shot was fired, Butler asked who had jumped her and said that she was going to shoot somebody. A.H. saw Butler holding a gun but did not see her firing it.

- Brown testified that she saw Butler fire two shots. The first shot was "up towards the air" and not in the direction of anyone. After Butler fired the second shot, Brown saw "the little girl drop."

Butler did not testify at trial but argued, in part, that she acted in self-defense to protect herself and her daughter.

The jury found Butler guilty of reckless second-degree murder (as a lesser included offense of first-degree premeditated murder), first-degree felony murder, and aggravated endangering a child. At sentencing, the district court merged the two murder convictions into a single conviction for first-degree felony murder and imposed a controlling term of life without the possibility of parole for 25 years, consecutive to a 7-month prison sentence.

Butler directly appealed to this court. Jurisdiction is proper. See K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 22-3601); K.S.A. 22-3601(b)(3)-(4) (life sentence and off-grid crime cases permitted to be directly taken to Supreme Court); K.S.A. 21-5402(b) (first-degree murder is off-grid person felony).

ANALYSIS

On appeal, Butler argues: (1) the evidence was insufficient to support her convictions, (2) the district court erred in denying her motion for mistrial based on the improper introduction of prior crimes evidence under K.S.A. 60-455, (3) the district court erred in denying her request to instruct the jury on the lesser included offense of misdemeanor endangering a child, (4) the district court erred in instructing the jury on self-defense, and (5) the cumulative effect of these errors deprived her of her constitutional right to a fair trial. We will address each argument in turn.

7

1. *Sufficiency of the evidence*

Butler argues the evidence was insufficient to support her conviction for aggravated endangering a child and, as a result, insufficient to support her felony-murder conviction predicated on that offense.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021) (quoting *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 [2016]).

Circumstantial evidence can support a conviction of even the gravest offense if the evidence allows a factfinder to find the elements beyond a reasonable doubt. *State v. Barnes*, 320 Kan. 147, 177-78, 563 P.3d 1255 (2025); see *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 (2016) ("[T]here is no distinction between direct and circumstantial evidence in terms of probative value."). Along with relying on circumstantial evidence to prove a crime's elements, the State may ask the jury to make reasonable presumptions and draw reasonable inferences from established facts. *State v. Chandler*, 307 Kan. 657, 670, 414 P.3d 713 (2018). An inference is sufficient to support a conviction if the evidence reasonably tends to support an inference. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

K.S.A. 21-5402(a)(2) defines felony murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." Aggravated endangering a child is included in the statutory list of inherently dangerous felonies. See K.S.A. 21-5402(c)(1)(S). Aggravated endangering a

child is "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." K.S.A. 21-5601(b)(1).

Consistent with this statutory definition, the district court instructed the jury that to find Butler guilty of felony murder, the State had to prove that (1) Butler killed N.M. and (2) the killing occurred while Butler was committing the crime of aggravated endangering a child. The court also instructed the jury that to establish the crime of aggravated endangering a child, the State was required to prove, in relevant part:

"1. The defendant recklessly caused N.M. to be placed in a situation in which her life, body or health was endangered.

"2. N.M. was less than 18 years old."

This instruction further informed the jury:

"A defendant acts recklessly when the defendant consciously disregards a substantial an[d] unjustifiable risk that certain circumstances exist or a result of the defendant's actions will follow. This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

Butler argues that because the statute includes a culpable mental state of recklessness, that mental state necessarily attaches to all material elements, including age. Based on her interpretation of the statute, Butler claims the State was required to prove that she knew N.M. was a minor. We disagree. The statute's structure, precedent, and the purpose of victim-classification elements all point to one conclusion:  age is a fact the

State must prove, not a fact the defendant must know. The required mental state of recklessness governs the defendant's conduct, not the victim's age.

We note at the outset that Butler relies primarily on *State v. Herndon*, 52 Kan. App. 2d 857, 379 P.3d 403 (2016), and *State v. Pattillo*, 311 Kan. 995, 469 P.3d 1250 (2020), to support her claim of insufficient evidence. But *Herndon* and *Pattillo* are "presence" cases—they concern whether the defendant was aware of the presence of a person in the danger zone, not whether the defendant knew that the endangered person was a minor.

In *Herndon*, the defendant was convicted of aggravated endangering a child after he fired a gun into a truck with a small child in the back seat. 52 Kan. App. 2d at 859-61. A Court of Appeals panel reversed the defendant's conviction, concluding the evidence was insufficient to support a finding that he was aware of the child's presence in the truck because he did not know the truck driver's girlfriend had a son or that anyone was in the back seat. The panel declined to infer that the defendant knew the truck driver's girlfriend had a child and that she must have had the child in the truck with her, concluding: "It is hard to imagine how Herndon consciously disregarded the risk to a child he had no reason to think was there." 52 Kan. App. 2d at 864.

In *Pattillo*, the defendant was convicted of felony murder based on aggravated endangering a child for his participation in a drive-by shooting of a home occupied by the victim and his seven-year-old nephew. 311 Kan. at 996-98. Relying on *Herndon*, the defendant argued that because the State failed to prove he knew a child was in the home when his codefendant fired the shots, he could not have consciously disregarded the risk of danger to the child. 311 Kan. at 1005. This court rejected the defendant's argument, finding that neither K.S.A. 21-5601(b)(1) nor the definition of reckless conduct "imposes a requirement that a person endangering a child must know a child is in danger." 311

10

Kan. at 1004. Rather, "[e]vidence can establish the mental-state element of the crime of aggravated endangerment of a child under K.S.A. 2019 Supp. 21-5601(b)(1) if it establishes the defendant was aware of a substantial and unjustifiable risk that a child was in the danger zone but the defendant consciously disregarded that risk." 311 Kan. at 1006. Distinguishing *Herndon*, we explained:

> "A difference exists between having a reason to think the child is present—that is, being aware of a substantial and unjustifiable risk that circumstances exist or that a result will follow—and the requirement Pattillo wants us to read into the statute—knowing a child is in a structure or motor vehicle." 311 Kan. at 1005.

We concluded that the defendant had reason to know there was a substantial and unjustifiable risk that a child would be in the home, as the child was outside when the defendant and his codefendant drove by 30 minutes before the shooting and the defendant knew the shooting victim and therefore would have known of his relationship with the child. 311 Kan. at 1005-06.

As noted above, the disputed issue in both *Herndon* and *Pattillo* was whether the defendant was aware of the presence of a person in the danger zone, not whether the defendant knew that the endangered person was a minor. The question of whether knowledge of a victim's age is a required element of aggravated endangering a child appears to be a matter of first impression for this court. To resolve this question, we begin our discussion with the statutory text.

Under K.S.A. 21-5601(b)(1), aggravated endangering a child is "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." This statutory subsection contains a single culpable mental state—recklessness. But the statute does not grammatically link

11

recklessness to the age element. Instead, the statute defines the prohibited conduct (recklessly causing or permitting a child to be endangered) and then defines the group of protected people ("child under the age of 18 years"). Age identifies who is protected, not the defendant's state of mind. Nothing in K.S.A. 21-5601(b)(1) suggests the Legislature intended to require a defendant to consciously disregard the risk that the victim is a child. Rather, the defendant must consciously disregard the risk that his or her conduct endangers whoever is present, and if the endangered person turns out to be a child, the statute applies.

A comparison to how Kansas law treats similar protective elements is instructive. When the Legislature identifies a protected zone or class, it typically creates an objective element, requiring the State to prove the fact—not the defendant's awareness of it. The analysis in *State v. Swafford*, 20 Kan. App. 2d 563, 890 P.2d 368 (1995), illustrates this point. There, the defendant argued that selling cocaine within 1,000 feet of a school required proof that he knew he was in a school zone. The Court of Appeals rejected that argument, holding that the proximity-to-school element defined a protected zone, not a mental-state requirement. Because the statute's purpose was to protect children in and around schools, the State needed to prove only the fact that the sale occurred within that restricted area, regardless of the defendant's knowledge. 20 Kan. App. 2d at 565-67.

A year later, this court adopted *Swafford*'s analysis and holding on this issue in *State v. Prosper*, 260 Kan. 743, 744-47, 926 P.2d 231 (1996) (rejecting defendant's argument that *Swafford* was wrongly decided).

The analysis set forth in *Swafford* and adopted by this court in *Prosper* applies with equal force to the age element in the child-endangerment statute at issue. A "child under the age of 18 years" identifies a protected class of victims, and the statute does not require the State to prove the defendant knew the victim's age. Just as *Swafford* held that

12

the State need not prove the defendant knew he was in a protected school zone, the State here did not need to prove Butler knew N.M. was under 18. The statute requires proof of reckless conduct, while the age element simply defines the protected group.

In this case, the district court's instructions mirrored the statute. The instruction defined recklessness, but only in connection with Butler's conduct—consciously disregarding a substantial and unjustifiable risk inherent in firing a gun toward a group of people. The instruction did not require the State to prove Butler consciously disregarded the risk that N.M. was a minor because the statute does not impose such a requirement. As for the age requirement, a separate instruction required the State to prove as a matter of historical fact that N.M. "was less than 18 years old." The State satisfied that burden through testimony establishing that N.M. was 17. Nothing more was required.

Because the State did not have to prove Butler knew or had reason to know that N.M. was a minor, the sufficiency question is straightforward. Viewed in the light most favorable to the State, a rational factfinder could have found beyond a reasonable doubt that (1) Butler acted recklessly by firing a gun toward a group of people—conduct that created a substantial and unjustifiable risk of serious harm to N.M. and (2) N.M. was under 18, as established by uncontroverted testimony. Because the State proved every required element of aggravated endangering a child, the evidence supports the predicate felony and Butler's felony-murder conviction.

One further point requires brief discussion. We granted the State's request to file supplemental briefing addressing the impact of K.S.A. 21-5204(b) on this issue. Having considered the parties' submissions, we conclude that although nothing in K.S.A. 21-5204(b) is inconsistent with our reading of the aggravated endangering a child statute, K.S.A. 21-5204(b) is unnecessary to our analysis. Our holding rests on the text and structure of the aggravated endangering a child statute, which makes the victim's age a

13

protected-class element that does not carry a culpable-mental-state requirement. See K.S.A. 21-5601(b)(1).

2. *Motion for mistrial*

Butler argues the district court erred in denying her motion for mistrial based on the State's improper introduction of prior crimes evidence in violation of K.S.A. 60-455 and her constitutional due process rights. We provide additional facts to place Butler's argument in context.

The State filed a pretrial motion to admit other crimes evidence under K.S.A. 60-455. The State sought to admit evidence that law enforcement had seized a 9-millimeter handgun from Butler during a March 26, 2021, arrest for driving under the influence (DUI). During their investigation, law enforcement test-fired Butler's gun and collected shell casings before returning the gun to Butler. The State argued this evidence was relevant to lay foundation for a firearms examiner's opinion that the shell casing collected from the scene of the shooting was fired from Butler's gun and to prove the identity of the shooter. In response, defense counsel argued that any mention of the DUI arrest would be unnecessarily prejudicial.

At a hearing on the motion, the prosecutor offered to present the relevant information at trial in a way that would only incidentally implicate K.S.A. 60-455, if at all, by not mentioning that Butler had been arrested for DUI. Following that offer, defense counsel agreed Butler would stipulate that the gun seized by law enforcement belonged to her and the test-fired shell casings belonged to her gun. Thereafter, the parties discussed how the State would present the evidence:

"[The prosecutor]: I can present this evidence without the officers testifying that they arrested her for DUI. I can have them leave that part out and testify that they encountered her. During that encounter, they seized that gun from her possession.

"THE COURT: Are you fine with that?

"[Defense counsel]: I am fine with that.

"[The prosecutor]: And later the defendant retrieved the same gun. And in the meantime the gun was fired and those shell casings were saved and submitted to the KBI for examination and comparison.

"THE COURT: Are you fine with the word 'encountered'?

"[Defense counsel]: Yes.

"THE COURT: 'Cause I don't want to—I don't want the word 'arrest.'

"[The prosecutor]: Sure.

"THE COURT: Okay. They encountered her. They retrieved the firearm. Test fired it. Okay. So you understand we're not—we're trying to—there's not going to be any mugshots from your DUI. There's not going to be—make sure there's no mugshot; right?

"[The prosecutor]: Right.

"THE COURT: Not that you would. We're going to make sure there's no mugshots. I don't want to say 'arrested.' Unless—now this is my ruling. I will follow what the parties are basically agreeing to. If in the middle of trial we get to a sticking point, we may have to come to the bench or take a recess and reargue this point. Okay."

At trial, Topeka Police Officer Michael Nelson testified about his encounter with Butler on March 26, 2021. When asked whether he collected anything from Butler during the encounter, Officer Nelson responded that he collected "[a] firearm, some firearm rounds, marijuana, and a bottle cap to a beer bottle." Defense counsel then interrupted and asked for a bench conference, where she objected to Officer Nelson's reference to marijuana. Claiming the evidence left Butler at a "clear disadvantage," defense counsel requested a mistrial. The prosecutor responded that Officer Nelson's reference to marijuana did not warrant a mistrial because a limiting instruction would cure any error. The prosecutor also admitted he had forgotten that officers had seized marijuana during the encounter with Butler and had just focused on not eliciting testimony that she had been arrested for DUI.

The district court judge denied Butler's motion for mistrial, finding no prejudicial conduct prevented her from receiving a fair trial:

> "The reference that the officer made, at this point, anyway, is, essentially, a passing or fleeting reference. There's no specific description about the defendant's conduct. And I don't think that there is enough evidence in which the jury is likely to infer criminal propensity to commit the crimes charged because of that one statement that he made.

> "So—and I, also, recognize that, at the conclusion of the trial, if it is necessary to obviate any prejudice that has come from that testimony, it can be addressed through a limiting instruction."

With the parties' agreement, the court then took a brief recess to allow the prosecutor to admonish Officer Nelson and another officer who was scheduled to testify that they were only allowed to talk about the seizure of Butler's gun, and not anything to do with the DUI arrest or marijuana. After the short break, the prosecutor resumed Officer Nelson's direct examination, which focused entirely on Butler's gun. There was

16

no further mention of marijuana during the remainder of the trial. At the end of the trial, the district court issued a general limiting instruction, informing the jury: "Evidence has been admitted alleging that the defendant committed crimes other than the present crimes charged. You must disregard this evidence and it may play no role in your decision as to the crimes charged."

On appeal, Butler asserts the district court erred in denying her motion for mistrial. She contends that Officer Nelson's mention of marijuana constituted a fundamental failure warranting a mistrial because it tainted the jury against her, impaired her ability to get a fair trial, and was not cured by the district court's limiting instruction.

K.S.A. 22-3423(1)(c) permits a district court to order a mistrial when "prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." We have held this statute requires the court to engage in a two-step analysis. First, the court must decide whether the alleged misconduct or error caused a fundamental failure in the proceeding. The rubric for analysis in this first step varies with the nature of the alleged misconduct, such as whether the allegation is based on the actions of a witness, the actions of a bystander, prosecutorial misconduct, or evidentiary error. See *State v. McCullough*, 293 Kan. 970, 980-81, 270 P.3d 1142 (2012). The court moves to the second step only if it determines at the first step that the alleged misconduct or error caused a fundamental failure in the proceeding. If so, the court must decide whether the fundamental failure in the proceeding resulted in prejudice that cannot be cured by an instruction or admonition, making it impossible to continue the trial without injustice. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

We review a district court's decision to deny a motion for mistrial for abuse of discretion. See *State v. Fraire*, 312 Kan. 786, 789-90, 481 P.3d 129 (2021). Judicial

discretion is abused if the court's action is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

a. *Fundamental failure in the proceedings*

Before trial, the parties and the district court carefully structured the presentation of evidence relating to Butler's March 26, 2021, encounter with police. The prosecutor agreed the officers would use the term "encounter" and would not mention Butler's DUI arrest. In exchange, Butler stipulated that the seized gun belonged to her and that the test-fired casings were fired from that gun. The district court endorsed the agreement and emphasized that neither the word "arrest" nor any reference to DUI-related materials should reach the jury.

At trial, however, Officer Nelson testified that during his encounter with Butler he seized "[a] firearm, some firearm rounds, marijuana, and a bottle cap to a beer bottle." Defense counsel immediately objected, arguing that any mention of marijuana violated the pretrial ruling and placed Butler at a clear disadvantage. She moved for a mistrial.

Although the parties' pretrial agreement focused on excluding evidence that Butler was arrested for DUI, evidence that police seized marijuana during the encounter constituted prior crimes evidence under K.S.A. 60-455. This statute governs the admission of evidence of prior crimes or bad acts; it provides that "evidence that a person committed a crime . . . on a specified occasion, is inadmissible to prove such person's disposition to commit crime . . . as the basis for an inference that the person committed another crime . . . on another specified occasion." K.S.A. 2024 Supp. 60-455(a). This

18

court has recognized that admission of prior crimes evidence may cause the jury to conclude that the defendant is a general wrongdoer who should not be believed. See *State v. Gunby*, 282 Kan. 39, 48-49, 144 P.3d 647 (2006).

With these principles in mind, our ability to assess whether Officer Nelson's comment constituted a fundamental failure depends on the district court's findings. Yet our ability to conduct this assessment is constrained by the district court's failure to make any explicit findings on this issue. And nothing in the record establishes whether the jury attached any particular significance to Officer Nelson's brief reference to the seizure of marijuana. Even so, the court permitted a recess to admonish the testifying officers, and it later issued a general limiting instruction at the close of trial.

The absence of explicit findings and the district court's prompt curative measures leave some ambiguity as to whether the court itself believed a fundamental failure occurred. But because the court proceeded to the second step of the mistrial analysis— and because Butler presses the issue on appeal—we will assume, without deciding, that Officer Nelson's reference to marijuana constituted a fundamental failure in the proceeding.

b. *Whether prejudice made it impossible to proceed without injustice*

Assuming a fundamental failure, we next consider whether the district court abused its discretion in deciding that any prejudice could be cured or mitigated by an instruction or admonition such that the trial could continue without injustice.

In support of its decision that the trial could continue without injustice, the district court noted the fleeting nature of the comment and the absence of any description suggesting criminal propensity. The court also observed that any residual prejudice could

19

be addressed through a limiting instruction—and the court later issued such an instruction, directing the jury to disregard any evidence suggesting Butler committed other crimes. For these reasons, the court concluded the jury was unlikely to infer that Officer Nelson's inadvertent reference to seizing marijuana bore on her guilt for the charged crimes.

Based on a review of the entire record, we cannot say the district court abused its discretion in concluding that the trial could continue without injustice, notwithstanding the isolated remark. Officer Nelson's inadvertent reference to marijuana was brief and inconsequential in the context of the entire four-day trial. He said nothing else about the encounter and made no specific reference to Butler's conduct. The comment did not permeate the evidence, did not relate to the identity of the shooter, and did not contradict the stipulations that already established Butler's possession of the gun and the ballistic match. The district court immediately took a short recess to allow the prosecutor to admonish Officer Nelson and another officer about the limitations on their testimony, and no attention was drawn to the mistake during the rest of the trial. Any prejudice from the uninvited reference was minimal and readily curable through instruction.

3. *Jury instruction on lesser-included offense*

The State charged Butler with aggravated endangering a child, which is defined as "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." K.S.A. 21-5601(b)(1). At the instructions conference, defense counsel requested an instruction on the lesser-included offense of misdemeanor endangering a child. This crime is defined as "knowingly and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be endangered."

20

K.S.A. 21-5601(a). The district court denied Butler's request. Butler now claims the district court erred.

We follow a multi-step framework when addressing instructional error issues. First, we consider whether the issue is reviewable; in other words, whether there is appellate jurisdiction and whether the issue is sufficiently preserved for our review. Second, we decide whether the challenged instruction was legally and factually appropriate. In doing so, we exercise unlimited review of the entire record and view the evidence in the light most favorable to the requesting party. Third, upon a finding of error, we determine whether that error requires reversal or can be considered harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

a. *Preservation*

At the instructions conference, defense counsel argued that a lesser-included instruction on misdemeanor endangering a child should be given because the jury might believe that Butler put N.M. in danger by letting her be present during the fight but might not believe Butler fired a gun at N.M. On appeal, however, Butler argues the lesser-included offense instruction was warranted because the line between child endangerment and aggravated child endangerment is ultimately a question of fact for the jury that requires an evaluation of the level of risk caused by the defendant's actions.

Where a request for or an objection to a jury instruction at trial is different from the argument presented on appeal, we review for clear error. See *State v. Friday*, 297 Kan. 1023, 1039, 306 P.3d 265 (2013); K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the

21

instruction or the failure to give an instruction is clearly erroneous."). Under this standard of review, an error may be considered harmless unless the party claiming it can firmly convince the appellate court the jury would have reached a different verdict without the error. See *Holley*, 313 Kan. at 254.

### b. *Legal and factual appropriateness*

Having determined the proper standard of review, we now consider whether the instruction was legally and factually appropriate, exercising unlimited review over the entire record. See *Holley*, 313 Kan. at 254. The parties agree that misdemeanor endangerment of a child is a lesser degree of aggravated endangering a child, a felony. See K.S.A. 21-5601; K.S.A. 21-5109(b). Thus, an instruction on the misdemeanor offense would have been legally appropriate. See K.S.A. 21-5109(b)(1) (A lesser included crime is a lesser degree of the same crime.); *State v. Gentry*, 310 Kan. 715, 721, 449 P.3d 429 (2019) (Generally, jury instructions on lesser included offenses are legally appropriate.).

Turning to factual appropriateness, the district court must instruct the jury on legally appropriate lesser included offenses where the evidence—viewed in the light most favorable to the defendant—would reasonably justify a conviction of the lesser included offense. *State v. Berkstresser*, 316 Kan. 597, 601, 603, 520 P.3d 718 (2022); see K.S.A. 22-3414(3) ("In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime.").

Butler claims an instruction on misdemeanor endangering a child was factually appropriate because the level of risk she caused by firing her gun in the air was a question of fact for the jury. The State disagrees, arguing the instruction was not factually

appropriate because Butler's act of shooting in the direction of a group of minors definitively endangered N.M.'s life.

When the parties offer a variety of competing reasons why the requested instruction was or was not factually appropriate, we may proceed directly to the harmlessness inquiry. Thus, we will assume—without deciding—that when the evidence is viewed in the light most favorable to Butler, it was sufficient for a rational factfinder to find for Butler on the requested lesser included offense and proceed directly to whether the failure to give the instruction was harmless. See *State v. Salary*, 301 Kan. 586, 598-99, 343 P.3d 1165 (2015).

c. *Harmlessness*

Moving to the final step of our analysis, we must determine whether the district court's failure to issue the lesser included offense instruction was clearly erroneous. To establish clear error, Butler must firmly convince this court the jury would have reached a different verdict without the error. See *Holley*, 313 Kan. at 254.

As discussed, endangering a child is "*knowingly and unreasonably* causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health *may be* endangered." (Emphases added.) K.S.A. 21-5601(a). Relevant here, aggravated endangering a child is "*[r]ecklessly* causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health *is* endangered." (Emphasis added.) K.S.A. 21-5601(b)(1). The difference between the two statutes can be summarized as follows:

> "While it is criminal under K.S.A. 21-3608(a) [a prior version of the misdemeanor endangering a child statute] to intentionally expose a child to situations where the child

23

*may be* injured or endangered *only if such an act is unreasonable*, it is criminal under K.S.A. 21-3608a(a)(1) [a prior version of the aggravated endangering a child statute] to intentionally expose a child to situations where the child *is* injured or endangered *without qualification*. Where the threat is real and actual, it could be said that the act of exposing a child to that threat is inherently unreasonable." *State v. Fabre*, No. 100,081, 2009 WL 1911696, at *7 (Kan. App. 2009) (unpublished opinion).

Under this rationale, to convict a defendant of aggravated child endangerment,

"the jury must decide that the threat is real and actual such that the act of exposing the child to that threat is inherently unreasonable. Thus, the dividing line laid out by the *Fabre* court was inherently unreasonable exposure to danger versus the jury questioning whether the exposure was reasonable or unreasonable." *State v. Sweet*, No. 125,858, 2024 WL 2237413, at *8 (Kan. App. 2024) (unpublished opinion).

Given the facts presented here, there is no real question that Butler's act of firing a gun in the direction of multiple children was inherently unreasonable. As such, Butler has failed to firmly convince us that a reasonable jury would have reached a different verdict had the lesser-included offense instruction been given.

4. *Jury instruction on self-defense*

Butler also argues the district court erred in instructing or failing to instruct the jury in three ways relating to her claim of self-defense. She contends the court erred in (1) instructing the jury on the doctrine of mutual combat, (2) failing to instruct the jury on the lesser-included offense of imperfect self-defense involuntary manslaughter, and (3) failing to instruct the jury on the State's burden to disprove her claim of self-defense.

To frame Butler's arguments, we start by reviewing the district court's decision to issue a self-defense instruction. At the instructions conference, defense counsel requested

24

a self-defense instruction under a defense-of-self and a defense-of-others theory. This request was based on Butler's statements to law enforcement that she fired a warning shot to defend herself and her daughter from the large group that was fighting. The prosecutor agreed that a self-defense instruction should be issued based on Butler's statements that she was acting in self-defense.

But the district court questioned whether a self-defense instruction was appropriate, citing potential issues relating to whether Butler was the initial aggressor and whether she had a duty to retreat or had engaged in mutual combat. The court took the instruction request under advisement and returned the next day with a proposed self-defense instruction that was informed by the mutual-combat doctrine discussed in *McCullough*, 293 Kan. at 975-77. Instruction no. 14 provided:

"The defendant is permitted to use against another person physical force that is likely to cause death or great bodily harm only when and to the extent that it appears to her and she reasonably believes such force is necessary to prevent death or great bodily harm to herself or someone else from the other person's imminent use of unlawful force. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief.

"When use of force is permitted as self-defense or defense of someone else, there is no requirement to retreat.

"The doctrine of self-defense or the defense of another person cannot excuse a killing done when the defendant willingly engaged in mutual combat unless the defendant has withdrawn in good faith and done everything in the defendant's power to avert the necessity of the killing. Mutual combat is defined as one into which both the parties enter willingly or voluntarily; it implies a common intent to fight, but not necessarily an exchange of blows. It does not matter who initiated the confrontation when both parties willingly engage in it."

25

The prosecutor did not object to the instruction or the mutual combat language in the third paragraph. But defense counsel did object, arguing that the mutual combat language was irrelevant, unhelpful, and would cause juror confusion. The judge overruled the objection, stating,

"Beginning with the premise that instructions are appropriate when they are both legally and factually appropriate, the Court determines that this additional language, beginning with the doctrine of self-defense or the defense of another, cannot excuse the killing done, et cetera, is legally appropriate, based upon the *McCullough* decision, that is an accurate statement of the law.

"The next question would then be whether or not it is factually appropriate. That is, have—has evidence been admitted that would justify the giving of that instruction. And the Court determines that there has been.

"There is evidence indicating that the defendant arrived at the scene of Ms. Morris and Ms. Brown's house, and engaged in a fight with [A.H.], Johnson, [Q.J.], and [N.M.]. And there was some even specific testimony from one witness that she had been engaged in a physical—that is, the defendant had been engaged in a physical altercation both with [A.H.] and [N.M.]. Then, apparently, the fighting subsided.

"[N.M.], [A.H.], [Q.J.], and Johnson began to walk away from the scene, and the defendant and her group, including Ms. Brown, [L.M.], possibly Aja Morris, began to follow the first group until, eventually, the shot was fired that ended up killing [N.M.]. So I believe, it's factually appropriate, or there's evidence indicating that the defendant engaged in mutual combat with the person she is accused of killing.

"And on the basis that the language is both legally and factually appropriate, I will overrule your objection, and I will include that language."

On appeal, Butler challenges the district court's decision to incorporate the mutual combat language from *McCullough* into the self-defense instruction. She notes that the

language is not found in Kansas' pattern jury instructions and claims its inclusion was both legally and factually inappropriate. Butler contends the language failed to fully inform the jury on the law of mutual combat and led the jury to believe that self-defense was not available to her unless she ran away. She also suggests that at the time of the shooting, there was no evidence of any physical combat.

We follow the same multistep framework set forth above: (1) we determine whether we can or should review the issue, in other words, whether there is a lack of jurisdiction or a failure to preserve the issue for appeal; (2) we consider the merits of the claim to determine whether error occurred below; and (3) we assess whether any error requires reversal, in other words, whether the error can be considered harmless. See *Holley*, 313 Kan. at 253.

Applying the steps of our jury instruction framework here, Butler requested the self-defense instruction at trial. And a self-defense instruction would have been legally appropriate. See K.S.A. 21-5222(b) (permitting use of deadly force in self-defense); *State v. Knox*, 301 Kan. 671, 677-78, 347 P.3d 656 (2015).

The key question is whether a self-defense instruction was factually appropriate in this case. A criminal defendant is generally entitled to instructions on the law applicable to his or her theory of defense if there is sufficient evidence, when viewed in the light most favorable to the defendant, for a rational factfinder to find for the defendant on that theory. See K.S.A. 21-5108(c); *State v. Wimbley*, 313 Kan. 1029, 1034-35, 493 P.3d 951 (2021).

a.  *Law on self-defense*

To analyze this question, we must first review the basic law regarding self-defense. K.S.A. 21-5222(a) provides that a person is justified in using force against another "when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force." Relevant here, the use of deadly force can only be justified to the extent a person "reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." K.S.A. 21-5222(b). Thus, a legally sufficient claim of self-defense requires satisfying a two-part test. The first is subjective and requires a showing that the defendant sincerely and honestly believed the use of deadly force was necessary to prevent imminent death or great bodily harm. The second part is objective and requires a showing that a reasonable person in the defendant's circumstances would have believed the same. *Salary*, 301 Kan. at 593-94.

But "[t]he doctrine of self-defense cannot excuse a killing done when the defendant willingly engaged in mutual combat unless the defendant has withdrawn in good faith and done everything in the defendant's power to avert the necessity of the killing." *McCullough*, 293 Kan. at 975 (citing *State v. Barnes*, 263 Kan. 249, 265-66, 948 P.2d 627 [1997] [participation in mutual combat prevents satisfaction of the subjective prong of the self-defense test]). Mutual combat occurs when both parties enter the combat "'willingly or voluntarily; it implies a common intent to fight, but not necessarily an exchange of blows.'" *McCullough*, 293 Kan. at 976; see *Friday*, 297 Kan. at 1038. It does not matter which party initiated the confrontation when both parties willingly engaged in it. 297 Kan. at 1038; *McCullough*, 293 Kan. at 976. The right to self-defense is not automatically extinguished in all mutual combat cases, "but for self-defense to justify the killing, the defendant must be acting 'solely for the protection of [the defendant's] own

28

life, and not to inflict harm upon [the defendant's] adversary.' [Citations omitted.]" 293 Kan. at 976.

b. *Application to Butler*

Based on the evidence presented at trial, Butler's group and N.M.'s group engaged in mutual combat through various verbal and physical altercations. Johnson, A.H., Q.J., and N.M. went to Brown's house with the intent of fighting. Although Butler initially denied participating in the fights and claimed she only got involved to separate those who were fighting, she later admitted during her police interview that when she tried to break up the fights, she "swung back." After the physical fighting between the groups ended, N.M. and her friends walked away from the house, and Butler's group followed them. The groups apparently did not reengage in physical fights, but they continued to argue and trash talk. A.H. and Johnson testified that Butler was behind the group threatening to pistol whip them. A.H. testified that Butler asked who had jumped her and said she was going to shoot someone. The evidence showed that N.M. was running away when she was shot in the back of the head.

When this evidence is viewed in the light most favorable to Butler, not only does it establish that her group and N.M.'s group engaged in mutual combat but also that she failed to withdraw in good faith and do everything in her power to avoid killing N.M. See *Friday*, 297 Kan. at 1038 (affirming trial court's refusal to issue self-defense instruction when evidence revealed that defendant and victim engaged in mutual combat and defendant resumed her participation after breaks in the action); *McCullough*, 293 Kan. at 976 (affirming trial court's refusal to issue self-defense instruction when evidence established defendant and victim engaged in mutual combat at a convenience store, defendant went to her car and reengaged with the conflict by returning to the store with a

29

knife, and defendant fatally stabbed victim). Thus, a self-defense instruction was not factually appropriate.

A self-defense instruction also would not have been factually appropriate because the evidence does not support both a subjective and objective belief by Butler that deadly force was necessary to defend herself or another against the imminent use of deadly force. Although Butler maintained throughout her interview with law enforcement that she feared for her safety and that of her daughter, a reasonable person in her position would not have believed deadly force was necessary to defend herself or another from imminent death or great bodily harm. By following N.M.'s group, Butler's group appeared to be attempting to continue the initial fight. The evidence was undisputed that no one in N.M.'s group was armed. Although there was evidence that Butler's brother, Daleon, had a gun sometime that evening, he was not present when the shooting occurred. There is no evidence that N.M. or anyone else was threatening or coming at Butler at the time of the shooting. To the contrary, the evidence shows that N.M. and her friends were running away and that N.M. was shot in the back of the head. See *State v. James*, 309 Kan. 1280, 1304, 443 P.3d 1063 (2019) ("Shooting an unarmed person in retreat is antithetical to self-defense."). And Butler's assertion that she was not trying to hit anyone while firing her gun is logically inconsistent with a claim that she subjectively believed deadly force was necessary. Finally, Butler's contention that her actions were in defense of her daughter is questionable, as the record reflects that the child was inside the house during the fighting and the shooting.

For these reasons, the district court erred in giving any self-defense instruction. But the error is harmless because there is no reasonable possibility or probability the error affected the trial's outcome considering the entire record. See *Holley*, 313 Kan. at 256-57 (setting forth the constitutional and nonconstitutional harmless error standards). Even if

30

the district court had not issued the self-defense instruction, the result of the trial would not have changed because the jury rejected Butler's claim of self-defense.

### c. *Conclusion*

Because Butler was not entitled to any self-defense instruction, her instructional claims of error necessarily fail. First, her challenge to the mutual combat language in the self-defense instruction is irrelevant given our finding that the district court erred by instructing the jury on self-defense. Second, Butler was not entitled to an involuntary manslaughter instruction based on a theory of imperfect self-defense. This theory requires the lawful exercise of self-defense, but with excessive force. K.S.A. 21-5405(a)(4); *James*, 309 Kan. at 1302. Because Butler was not lawfully engaged in self-defense, an imperfect self-defense involuntary manslaughter instruction was not factually appropriate. Third, an instruction on the State's burden to disprove her claim of self-defense was unwarranted in the absence of a self-defense instruction.

## 5. *Cumulative error*

Butler's final argument is that the cumulative effect of the alleged errors violated her constitutional right to a fair trial. Cumulative trial errors, considered collectively, may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

We addressed two alleged instructional errors in the analysis above. First, we assumed—without finding—error in the district court's refusal to give a lesser included offense instruction on misdemeanor child endangerment, but ultimately concluded the

omission was not clearly erroneous. Second, we found that the district court erred by giving a self-defense instruction, but that error was harmless.

But because Butler did not preserve the lesser included offense issue, it cannot be factored into a cumulative error analysis. Under *State v. Waldschmidt*, 318 Kan. 633, 662, 546 P.3d 716 (2024), unpreserved instructional errors that are not clearly erroneous may not be aggregated as cumulative error. The only remaining error is the district court's decision to give a self-defense instruction, which we found to be harmless. Because the cumulative error doctrine does not apply when there is a single error, Butler's claim necessarily fails. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (The cumulative error rule does not apply if there are no errors or only a single error.).

The judgment of the district court is affirmed.

LUCKERT, J., not participating.